**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SHIELD INDUSTRIAL COATINGS, LLC,** | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **SHIELD LINERS, LLC, COLTON W. FULTZ, and JESSICA FULTZ,** | § | **CIVIL CASE NO. 4:24-CV-01753-AHB** |
| *Defendants/Counter-Plaintiffs/Cross-Plaintiffs,* | § | |
| | § | **(JURY DEMANDED)** |
| | § | |
| **V.** | § | |
| | § | |
| **MICHAEL WITT and KRAIG KILLOUGH,** | § | |
| *Third-Party Defendants/Cross-Defendants.* | § | |

---

**DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40)**
**SHIELD INDUSTRIAL COATINGS, LLC'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **COME NOW**, Defendants/Counter-Plaintiffs, Shield Liners, LLC ("**Shield Liners**"), Colton W. Fultz ("**C.Fultz**"), and Jessica Fultz's ("**J.Fultz**") (collectively, "**Defendants**"), in the above-styled and numbered cause, and respectfully file this Defendants/Counter-Plaintiffs' Response to Shield Industrial Coatings, LLC's Motion for Summary Judgment (D.I. 40; the "**Motion**"), respectfully requesting this Honorable Court to deny the Motion, including for those reasons set forth hereinbelow, and, in support thereof, would respectfully show unto this Honorable Court as follows:

P a g e **i** | **v**

[DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]                    Case No.: 4:24-CV-01753-AHB

## TABLE OF CONTENTS

Table of Contents ........................................................................................................... ii

Table of Authorities ...................................................................................................... iii

I.      Introduction and Background ............................................................................. 1

II.     Facts in Response to Plaintiff's "Undisputed" Material Facts .......................... 1

III.    Issues Presented ................................................................................................. 7

IV.     Summary Judgment Standard ............................................................................ 8

V.      Argument and Authorities ............................................................................... 11

   A.   Legal Principles ............................................................................................ 11

   B.   Plaintiff Fails To Conclusively Prove Its Claim Under The TEXAS THEFT LIABILITY ACT. .................................................................................................. 13

        1.   Plaintiff did not have a possessory right to the allegedly stolen property. ................... 13

        2.   Defendant C.Fultz did not unlawfully appropriate any allegedly stolen property without Plaintiff's effective consent. ...................................... 15

        3.   Defendant C.Fultz did not have an intent to deprive Plaintiff regarding any allegedly stolen property. ................................................................... 15

        4.   Plaintiff did not sustain damages from any alleged theft. ............................................. 16

VI.     Conclusion and Prayer for Relief .................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Eeds,*
   392 F.3d 138 (5th Cir. 2004) ........................................................................................ 10

*Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,*
   343 F.3d 401 (5th Cir. 2003) ........................................................................................ 10

*Am. Trigger Pullers LLC v. Wylde,*
   No. CV H-19-2694, 2020 WL 1809724 (S.D. Tex. Apr. 9, 2020) ................................ 10

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................... 8, 9, 11

*Armstrong v. Am. Home Shield Corp.,*
   333 F.3d 566 (5th Cir. 2003) ........................................................................................ 10

*Axxiom Mfg., Inc. v. McCoy Invs., Inc.,*
   846 F. Supp. 2d 732 (S.D. Tex. 2012) ........................................................................... 9

*Banks v. State,*
   471 S.W.2d 811 (Tex. Crim. App. 1971).................................................................... 12

*Baranowski v. Hart,*
   486 F.3d 112 (5th Cir. 2007) ......................................................................................... 9

*Bazan ex rel. Bazan v. Hidalgo County,*
   246 F.3d 481 (5th Cir. 2001) ......................................................................................... 8

*Beardmore v. Jacobsen,*
   131 F. Supp. 3d 656 (S.D. Tex. 2015) ........................................................................ 11

*Beaumont v. Basham,*
   205 S.W.3d 608 (Tex. App.—Waco 2006, *pet. denied*) ........................................... 13

*Boudreaux v. Swift Transp. Co., Inc.,*
   402 F.3d 536 (5th Cir. 2005) ................................................................................. 10, 11

*Byers v. Dall. Morning News, Inc.,*
   209 F.3d 419 (5th Cir. 2000) ......................................................................................... 9

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).................................................................................................. 8, 9

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,*
   530 F.3d 395 (5th Cir. 2008) ........................................................................................ 10

*Domain Prot., L.L.C. v. Sea Wasp, L.L.C.,*
   23 F.4th 529 (5th Cir. 2022) .......................................................................................... 9

*Domain Prot., LLC v. Sea Wasp, LLC,*
   426 F. Supp. 3d 355 (E.D. Tex. 2019), *aff'd sub nom. Domain Prot., L.L.C. v. Sea Wasp,*
   *L.L.C.,* 23 F.4th 529 (5th Cir. 2022) .................................................................. 8, 9, 12

*Eaton v. State,*
   533 S.W.2d 33 (Tex. Crim. App. 1976)...................................................................... 12

*First National Bank of Arizona v. Cities Service Company,*
   391 U.S. 253, 288–289 (1968)....................................................................................... 9

*Fontenot v. Upjohn Co.,*
   780 F.2d 1190, 1194 (5th Cir. 1986) ............................................................................. 9

*Forsyth v. Barr,*
   19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994)....... 9, 10

*Forsyth v. Barr*,
    513 U.S. 871, 115 S.Ct. 195 (1994) ........................................................................ 9
*Freeman v. State*,
    707 S.W.2d 597 (Tex. Crim. App. 1986) (*en banc*) ............................................. 12
*Homesteaders Life Co. v. Williams*,
    No. 3:24-CV-0347-K, 2025 WL 789559 (N.D. Tex. Mar. 11, 2025) ...................... 11
*In re TXCO Res., Inc.*,
    475 B.R. 781 (Bankr. W.D. Tex. 2012) .................................................................. 13
*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
    No. SA-21-CV-00673-XR, 2023 WL 28723 (W.D. Tex. Jan. 2, 2023) ................... 10
*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) (*en banc*) ............................................................. 9, 10
*Littlefield v. Forney Indep. Sch. Dist.*,
    268 F.3d 275 (5th Cir. 2001) ................................................................................... 9
*Malacara v. Garber*,
    353 F.3d 393 (5th Cir. 2003) ................................................................................. 11
*Manning v. State*,
    68 S.W.3d 697 (Tex. App.—Corpus Christi 2000, *pet. ref'd*) .............................. 12
*Martinez v. Schlumberger, Ltd.*,
    338 F.3d 407 (5th Cir. 2003) ................................................................................... 8
*Matsushita Electric Industrial Company v. Zenith Radio Corporation*,
    475 U.S. 574 (1986) .............................................................................................. 10
*McGee v. State*,
    774 S.W.2d 229 (Tex. Crim. App. 1989) ............................................................... 12
*Morris v. Covan World Wide Moving, Inc.*,
    144 F.3d 377 (5th Cir. 1998) ............................................................................ 10, 11
*R.J. Suarez Enterprises Inc. v. PNYX L.P.*,
    380 S.W.3d 238 (Tex. App.—Dallas 2012, *no pet.*) ............................................. 13
*Ragas v. Tenn. Gas Pipeline Co.*,
    136 F.3d 455 (5th Cir. 1988) ................................................................................... 8
*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*,
    336 F.3d 410 (5th Cir. 2003) ................................................................................. 10
*Septimus v. Univ. of Houston*,
    399 F.3d 601, 609 (5th Cir. 2005) ......................................................................... 11
*Sossamon v. Lone Star State of Texas*,
    560 F.3d 316 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct.
    1651, 179 L.Ed.2d 700 (2011) ................................................................................. 8
*Sossamon v. Texas*,
    563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011) .......................................... 8
*Stokes v. Carcavba, LLC*,
    No. EP-22-CV-00271-ATB, 2024 WL 1023068 (W.D. Tex. Mar. 8, 2024) ......... 9, 10
*Stults v. Conoco, Inc.*,
    76 F.3d 651 (5th Cir. 1996) ..................................................................................... 9
*Tubacex, Inc. v. M/V Risan*,
    45 F.3d 951 (5th Cir. 1995) ..................................................................................... 9
*Wallace v. Tex. Tech Univ.*,
    80 F.3d 1042 (5th Cir. 1996) ................................................................................. 10

*Wiley v. State Farm Fire and Cas. Co.*,
    585 F.3d 206 (5th Cir. 2009) ............................................................... 8

*Winkley v. State*,
    123 S.W.3d 707 (Tex. App.—Austin 2003, *no pet.*) ............................. 12

**Statutes**

TEXAS CIVIL PRACTICE AND REMEDIES CODE § 134.005 ............................. 12

TEXAS PENAL CODE § 31.01 ....................................................................... 12

TEXAS PENAL CODE § 31.03 ................................................................. 11, 12

TEXAS PENAL CODE § 31.05 ....................................................................... 12

TEXAS THEFT LIABILITY ACT, TEXAS CIVIL PRACTICE AND REMEDIES CODE, Chapter 134 ... 7, 11, 13

**Rules**

FEDERAL RULES OF CIVIL PROCEDURE 56 ....................................... 7, 8, 9, 10

P a g e **v | v**

[DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]                    Case No.: 4:24-CV-01753-AHB

## I. INTRODUCTION AND BACKGROUND

1.  Blah

## II. FACTS IN RESPONSE TO PLAINTIFF'S "UNDISPUTED" MATERIAL FACTS

2.  In mid-to-late 2021, after becoming friends with two other individuals in the neighborhood, Third-Party Defendants/Cross-Defendants, Michael Witt ("**Witt**") and Kraig Killough ("**Killough**") (collectively, "**Third-Party Defendants**"), Defendant C.Fultz decided to go into business with them, and Defendant C.Fultz asked for the assistance of these two new friends. **Exhibit 2** at 2, ¶ 3; **Exhibit 3** at 2, ¶ 3. This new business was to be Shield Industrial Coatings, LLC, and the company was officially formed and filed as a Texas LLC in August of 2021. *Id.* The company was to be operated for at least the purposes of manufacturing and supplying a polyurea chemical solution to customers (primarily in the oil and gas, automotive, and construction industries) for use as a durable, quick-acting protective coating. *Id.* Among its various applications, this polyurea solution can be applied to products and equipment (such as chemical tanks and containment basins, automobile liners and trailers, and indoor and outdoor flooring) to protect against corrosion, abrasions, and slips-and-falls. *Id.*

3.  As part of the discussions with Third-Party Defendants, Defendant C.Fultz and Third-Party Defendants decided to form the entity with equal shares of the company, with Third-Party Defendant Witt, Third-Party Defendant Killough, and Defendant C.Fultz. **Ex. 2** at 3, ¶ 4. As part of the agreement, after several months of discussion and planning, Defendant C.Fultz was chosen to act as the operator of the company who would run the operations of Plaintiff as an equal one-third owner of the company, Third-Party Defendant Witt would act as the managing member of Plaintiff as an equal one-third owner of the company, and Third-Party Defendant Killough would primarily serve as the financial backer of the company as an equal one-third owner of the company. *Id.*

4.     Despite the equal one-third ownership of each party, the parties agreed that Defendant C.Fultz would be the only owner to earn a salary, at an agreed-upon rate of $90,000. **Ex. 2** at 2-3, ¶ 5. This amount was based on the salary Defendant C.Fultz had at his position at Marvel Industrial Coatings prior to forming Plaintiff of approximately $130,000, as set forth in the pay stubs that Defendant C.Fultz showed to Third-Party Defendant Killough during the discussions. *Id*. The $130,000 yearly earning actually represented one of Defendant C.Fultz's lowest years, as it was during the onset of COVID in 2020. *Id*. Thus, not only did the agreed-upon $90,000 salary represent a reduction in the pay Defendant C.Fultz was currently receiving at the time, but it was still a $40,000 reduction from Defendant C.Fultz's lowest amount earned. Defendant C.Fultz's expectation was that his share of the profits from this new venture would compensate for this temporary reduction. *Id*.

5.     Shortly after leaving his prior job in February 2021 to fully commit to Plaintiff, Defendant C.Fultz's wife, Defendant J.Fultz, began assisting him in running the company, including working full-time in marketing and secretarial roles for Plaintiff, without compensation. **Ex. 2** at 3, ¶ 6; **Ex. 3** at 2, ¶ 4. In addition to their sweat-equity, Defendants C.Fultz and J.Fultz invested personal funds into setting up the office for Plaintiff and purchasing some of the necessary equipment. *Id*. At the beginning, the office and work location for Plaintiff so that the company initially operated from an office space shared with Third-Party Defendant Witt's other company, ARW Off-Road. *Id*.

6.     In March of 2021, Defendant J.Fultz began assisting Defendant C.Fultz and worked full-time in marketing and secretarial roles for Plaintiff, without compensation. **Ex. 2** at 3, ¶ 7; **Ex. 3** at 2, ¶ 5. Both invested personal funds into setting up the office and purchasing necessary equipment. *Id*. Throughout 2021, both Defendant C.Fultz and J.Fultz worked tirelessly to grow the business, with Defendant J.Fultz taking on a nursing contract again in August of 2021 to alleviate

financial strain while still supporting Shield Industrial. *Id*. Unfortunately, Defendant C.Fultz was never actually paid his full salary. *Id*.; *see* **Exhibit A**; **Exhibit B**.

7.    During Defendant C.Fultz's tenure at Plaintiff, he was never an employee of Plaintiff, but, rather, was, at a minimum, a member and officer. **Ex. 2** at 3-4, ¶ 8. Throughout Defendant C.Fultz's tenure as an member-owner of Plaintiff, he was presented as an owner to outside parties by Third-Party Defendants, he was interacted with as an owner by both Third-Party Defendants and outside parties, he had access to sensitive documents and records as an owner, and he was assured repeatedly by each of Third-Party Defendants that he was an owner. *Id*. In fact, due to his experience in the field, and the lack of experience in the field of each of Third-Party Defendants, Defendant C.Fultz was tasked with doing everything necessary to actually run the business. *Id*. Third-Party Defendants, and, thus, Plaintiff, relied on Defendant C.Fultz almost entirely, and Third-Party Defendants were essentially only tasked with funding the company and managing the company. *Id*. Defendant C.Fultz was also held out as Chief Operations Officer for Plaintiff, and an officer in the company with significant operational authority. *Id*.; *see also id*. at 4-5, ¶¶ 9-14.

8.    Additionally, in order to confirm Defendant C.Fultz's member-owner position in the company, prior to leaving his prior job in early 2021, Defendant C.Fultz was shown a contract by Third-Party Defendant Witt setting forth Defendant C.Fultz's equal one-third interest on Third-Party Defendant Witt's computer. *Id*. at 5-6, ¶ 15. When Defendant C.Fultz asked if it was ready to be signed, Third-Party Defendant Witt noted that Third-Party Defendant Witt needed to make some additional redlines, but would send the updated version. *Id*. However, despite multiple requests for the updated version, Defendant C.Fultz never received any updated version. *Id*.

9.    Even though Defendant C.Fultz never received any updated contract, on May 13, 2021, Third-Party Defendant Killough confirmed the ownership model of Plaintiff, including Defendant C.Fultz's equity interest and salaried nature with the company via group message between

P a g e **3 | 18**

[DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]                                                                          Case No.: 4:24-CV-01753-AHB

Defendant C.Fultz and each of Third-Party Defendants. *Id*. at 6, ¶ 16; **Exhibit C**. As set forth in the messages, the model included immediate one-third ownership (now, inexplicably reduced to 30% without my approval) and an opportunity for additional immediate income due to Defendant C.Fultz's industry experience and sales. *Id*. This group text included Third-Party Defendant Witt, who confirmed the agreement. *Id*. Further, on the same day, after Third-Party Defendant made statements in a text message regarding commission-based pay that undermined Defendant C.Fultz's interest in the company, Defendant C.Fultz was prompted to reiterate that he was told otherwise and began questioning how his ownership interest was being treated. *Id*.; **Exhibit D**.

10.  Later in 2021, Defendant C.Fultz took charge in relocating the company to a new office within the same business center, and noticed that Third-Party Defendant Witt continued to allocate funds from Plaintiff to cover the rent for his unrelated business, ARW Off-Road, without the knowledge of Defendant C.Fultz or Third-Party Defendant Killough. *Id*. at 6, ¶ 17. I was only able to uncover this financial impropriety during a review of QuickBooks transactions for the company. *Id*.

11.  By mid-2022, financial pressure mounted as Defendant C.Fultz's payments from Plaintiff ceased and Defendant J.Fultz's nursing income became the household's sole support. *Id*. at 6, ¶ 18; **Ex. 3** at 4, ¶ 12. Despite these challenges, Defendants C.Fultz and J.Fultz continued to invest time and money into the business. *Id*. Moreover, during this time, Defendant C.Fultz started to become more aware of Third-Party Defendant Witt's impropriety and failure to do his job, including failing to properly file tax paperwork, which resulted in the forfeiture of the company in 2022. *Id*.

12.  In the spring of 2023, Third-Party Defendant Witt unfortunately suffered a severe traumatic brain injury because of an accidental workplace fall and, based on information and belief, was medically required to stay in the hospital for several weeks and was unable to return to the

workplace for several months while he recuperated from his injuries. **Ex. 2** at 7, ¶ 19; **Ex. 3** at 4-5, ¶ 13. During this lengthy recuperation period, as owner of Plaintiff, Defendant C.Fultz served as the sole de facto manager and officer for Plaintiff, as there was no other person to take this role. *Id*. Based on information and belief, Third-Party Defendant Witt was injured when he fell from his trailer at a Jeep event in Moab and returned home quickly. *Id*. Based on information and belief, despite this injury, he went on vacation with his family on June 20, 2023 and again on July 4, 2023 during his alleged 'recuperation' period. *Id*. This further cemented that Third-Party Defendant Witt simply disregarded any of his obligations to the company, including never coming to the office and never checking in. *Id*.

13.   During this time, Defendant C.Fultz contacted Third-Party Defendant Killough to inform him of these improprieties and concerns regarding the finances of the company. **Ex. 2** at 7, ¶ 20; **Ex. 3** at 5, ¶ 14. Specifically, Defendant C.Fultz noted that the costs for rent were becoming unmanageable and it would be a good idea if the company moved locations. *Id*. Third-Party Defendant appeared to not really care and just told Defendant C.Fultz to do what he needed to handle things. *Id*. By this point, it had been months since Defendant C.Fultz had last received his agreed-upon salary payment. *Id*. Defendant C.Fultz's payments were stopped by Third-Party Defendant Witt without any explanation or notice given until Defendant C.Fultz eventually confronted Third-Party Defendant Witt about the missed payments. *Id*. Despite this, Defendant C.Fultz continued to work alongside Defendant J.Fultz to increase profitability so the business they had worked so hard for could hopefully afford to continue making Defendant C.Fultz's salary payments and, if possible, make payments from profit shares. *Id*.

14.   Thus, in order to reduce costs, Defendants C.Fultz and J.Fultz began relocating the company property, purchased with funds the company made solely from the work Defendant C.Fultz performed, to a new location they had just purchased, where there would not be any rent

to pay, thus reducing the company's overhead. **Ex. 2** at 7-8, ¶ 21; **Ex. 3** at 5, ¶ 15. During this time, both Third-Party Defendants worked with Defendant C.Fultz to relocate the property. *Id*. It was Defendant C.Fultz's understanding, based on information and belief, that, although Plaintiff's property was able to be removed from the shared location, Third-Party Defendant Witt was unable to leave the lease because his brother had damaged the door and his other company was required to pay for it. *Id*.

15.  It was not until July 2023, when disagreements started to arise between Defendant C.Fultz and Third-Party Defendants over office space and operational support, that Third-Party Defendants ceased this amicable assistance. **Ex. 2** at 8, ¶ 22; **Ex. 3** at 5-6, ¶ 16. Despite being aware of the relocation, on July 25, 2023, Defendant C.Fultz exchanged text messages with Third-Party Defendants where they accused Defendant C.Fultz of stealing the property. *Id*.; **Exhibit E**. In response, Defendant C.Fultz indicated that they knew that there was no robbery, and that Defendant C.Fultz was "working on a set up that will help me get things done more efficiently" and that Defendant C.Fultz could better explain if they would simply talk to him in person. *See id*. During this time, Third-Party Defendant Killough texted Defendant C.Fultz regarding selling the entire company to him, and allowing him to keep the name and continue operations. *Id*.; **Exhibit F**.

16.  Although, at times, Third-Party Defendants would resurface to try and see if Defendants C.Fultz and J.Fultz were still spraying at Third-Party Defendant Killough's dealership in Alvin, Texas, and even try to send them business. **Ex. 2** at 8, ¶ 23; **Ex. 3** at 6, ¶ 17. Third-Party Defendant Witt even contacted Defendant C.Fultz to give condolences following the passing of his father. *Id*. Third-Party Defendant Killough continued to communicate with Defendant C.Fultz, attempting to sell the company to Defendant C.Fultz. *Id*.

17.  Only when Third-Party Defendant Killough began drafting a proposal with his attorney

Page **6** | **18**

[DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]    Case No.: 4:24-CV-01753-AHB

was it stated that Defendant C.Fultz, in fact, was never given any legal ownership in the company. **Ex. 2** at 8-9, ¶ 24; **Ex. 3** at 6, ¶ 18. At that point, Defendants C.Fultz and J.Fultz stopped communicating with Third-Party Defendants, and there were no real efforts by them to obtain any of the equipment they now allege belongs to them. *Id*. Rather, at that point, most of the equipment and office supplies were already fully within the possession of Defendants C.Fultz and J.Fultz, who were continuing to operate the company. *Id*.

18.   Rather than work with Defendant C.Fultz, Plaintiff and Third-Party Defendants decided to file suit against Defendants. **Ex. 2** at 9, ¶ 25; **Ex. 3** at 6, ¶ 19. Notably, due to the fact that the company ran almost entirely off of Defendant C.Fultz's and Defendant J.Fultz's work, and Third-Party Defendant Witt failed to act in the interest of the company, the company failed soon after Defendant C.Fultz was forced to leave in late 2023. *Id*. In fact, as of today, without the services of Defendants C.Fultz and J.Fultz, the company no longer exists. *Id*. In fact, the company has, again, been forfeited for failure to properly file tax documents. *Id*.

### III. ISSUES PRESENTED

19.   Whether Plaintiff/Counter-Defendant, Shield Industrial Coatings, LLC ("**Plaintiff**"), has met its burden on summary judgment to show that, when all of the competent summary judgment evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to Defendants, Plaintiff has conclusively proven each and every element of its claims against Defendant C.Fultz[1] under the TEXAS THEFT LIABILITY ACT ("**TTLA**") and that no genuine issue

---

[1] It is unclear precisely what claims on which Plaintiff is moving, as its initial paragraph states Plaintiff "seeks summary judgment against ***Shield Liners, LLC, Colton W. Fultz*** [*sic*] on its Texas Theft Liability Act claims" (*see* D.I. 40 at 1; emphasis added); its conclusion states Plaintiff "seeks summary judgment on its Texas Theft Liability Act claims against ***Colton Fults*** [*sic*]" (*see* D.I. 40 at 11; emphasis added); and the body of the Motion only discusses Plaintiff's claim in relation to Defendant C.Fultz (*see, gen.*, D.I. 40). Thus, as it appears Plaintiff solely argues with respect to Defendant C.Fultz, Defendants' Response shall only address those arguments in the body of the Motion.

of material fact remains for any such element.

#### IV. SUMMARY JUDGMENT STANDARD

20.  FEDERAL RULE OF CIVIL PROCEDURE 56 authorizes summary judgment where a party "shows that there is no genuine dispute as to any material fact and the [party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988). "A fact is material only if its resolution would affect the outcome of the action" under the governing substantive law and "an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011) (citation omitted).

21.  The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 324; *see also Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if the movant shows "a fact cannot be or is genuinely disputed" based on "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). Specifically, "[i]f the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes 'beyond peradventure all of the essential elements of the claim or defense.'" *Domain Prot., LLC v. Sea Wasp, LLC*, 426 F. Supp. 3d 355, 369 (E.D. Tex. 2019), *aff'd*

*sub nom. Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529 (5th Cir. 2022) (*quoting Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). "Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case." *Domain Prot.*, 426 F.Supp. 3d at 369 (*citing Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000)). Thus, "[t]he moving party bears the initial burden of establishing that no genuine fact dispute exists, either by pointing to evidence so establishing, or by pointing out a lack of evidence to support the nonmovant's case." *Stokes v. Carcavba, LLC*, No. EP-22-CV-00271-ATB, 2024 WL 1023068, *2 (W.D. Tex. Mar. 8, 2024) (*citing* FED. R. CIV. P. 56(c)(1)(A)–(B); *Celotex*, 477 U.S. at 324–325).

22.   Only if the movant meets this burden does the burden then shift to the nonmovant to "designate specific facts showing that there is a genuine issue for trial" beyond mere reliance on the allegations or denials in the nonmovant's pleadings. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (*citing Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence'" supports resolution of the material factual issues in its favor. *Stults*, 76 F.3d at 656 (*quoting Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195 (1994)); *Anderson*, 477 U.S. at 248–250 (*citing First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–289 (1968)); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 742 (S.D. Tex. 2012) (*citing Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007)); *Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" by proffering improbable assertions,

hearsay, conclusory allegations, unsubstantiated assertions, or unsupported speculation, which are not competent summary judgment evidence, or by only a scintilla of evidence. *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986); *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008); *Am. Trigger Pullers LLC v. Wylde*, No. CV H-19-2694, 2020 WL 1809724, *2 (S.D. Tex. Apr. 9, 2020) (internal citations omitted); *Stokes*, 2024 WL 1023068 at *2 (*citing Forsyth*, 19 F.3d at 1533); *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. SA-21-CV-00673-XR, 2023 WL 28723, *3 (W.D. Tex. Jan. 2, 2023); *Little*, 37 F.3d at 1075. Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential" element of each asserted claim. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (*quoting Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

23.   When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must view the evidence presented in the record in the light most favorable to the nonmoving party and make all reasonable inferences from such evidence in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996); *see McClain*, 2023 WL 361554 at *3 (*citing Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003); *quoting Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004)); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (*citing Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003); *Little*, 37 F.3d at 1075). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075. But, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…consider the fact undisputed for purposes of the motion." *Wylde*, 2020 WL 1809724 at *2

(*quoting* FED. R. CIV. P. 56(e)(2)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses" in making its ruling, nor does Rule 56 "impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record." *McClain*, 2023 WL 361554 at *4 (*citing Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)); *Boudreaux*, 402 F.3d at 540 (*citing Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (*quoting Anderson*, 477 U.S. at 251–252).

## V.  ARGUMENT AND AUTHORITIES

### A.  Legal Principles

24.  "[U]nder the Texas Theft Liability Act (the "TTLA"), '[a] person who commits theft is liable for the damages resulting from the theft.'" *Homesteaders Life Co. v. Williams*, No. 3:24-CV-0347-K, 2025 WL 789559, *3 (N.D. Tex. Mar. 11, 2025) (*quoting* TEX. CIV. PRAC. & REM. CODE § 134.003(a); *citing Beardmore v. Jacobsen*, 131 F.Supp.3d 656, 669 (S.D. Tex. 2015) ("The TTLA provides victims of a theft, as defined in various sections of the TEXAS PENAL CODE, with a civil action to recover damages, fees, and costs from the thief.")). "To establish a TTLA claim, the plaintiff must show that: '(1) the plaintiff had a possessory right to property…; (2) the defendant unlawfully appropriated property…in violation of certain sections of the PENAL CODE; and (3) the plaintiff sustained damages as a result of the theft.'" *Homesteaders*, 131 F.Supp.3d at 669 (*quoting Domain Prot.*, 426 F. Supp. 3d at 382-383 (internal citation omitted); TEX. PENAL CODE § 31.03(b)(1) ("Appropriation of property is unlawful if it is without the owner's effective consent.")).

25.  "The issue of 'ownership' goes to the scope of the property interest protected by the law and is intended to protect all ownership interests in property from criminal behavior." *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986) (*en banc*). "When there are equal competing possessory interests in property allegedly stolen, we believe that the key to answering the question of which person has the greater right to possession of the property is who, *at the time of the commission of the offense*, had the greater right to possession of the property." *Id.* (emphasis in original). A party may "prove ownership in three ways: (1) by showing title, (2) by proving possession, or (3) by showing that the alleged owner has a greater right to possession than the defendant." *Manning v. State*, 68 S.W.3d 697, 698 (Tex. App.—Corpus Christi 2000, *pet. ref'd*) (*citing Eaton v. State*, 533 S.W.2d 33, 35 (Tex. Crim. App. 1976)).

26.  A party unlawfully appropriates property by transferring, acquiring, or exercising control over the property "without the owner's effective consent." *Domain Prot.*, 426 F. Supp. 3d at 383 (*quoting* TEX. PENAL CODE §§ 31.01, 31.03). Further, in Texas, "theft" occurs where the unlawful appropriation occurs with the party's "intent to deprive the owner of property." *Domain Prot.*, 426 F. Supp. 3d at 383 (*quoting* TEX. PENAL CODE § 31.05). "'Deprive,' as defined by TEX. PENAL CODE § 31.01, means: 'to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.'" *Domain Prot.*, 426 F. Supp. 3d at 384. All that is required is intent to deprive, not that actual deprivation occurred, and "'[e]ven in cases where there exists no evidence directly indicating an intent to steal property, it has been held that such intent may be inferred from the words, actions, or conduct of the actor.'" *Domain Prot.*, 426 F. Supp. 3d at 383 (*quoting Winkley v. State*, 123 S.W.3d 707, 713 (Tex. App.—Austin 2003, *no pet.*) (*citing McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989); *Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App. 1971))).

27.  A "person who has sustained damages resulting from theft may recover…the amount of

actual damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000." TEX. CIV. P. REM. CODE § 134.005(a)(1). "Actual damages" means those damages recoverable at common law, meaning direct and consequential damages resulting from the defendant's wrongful acts, such as economic damages and mental anguish damages. *See Beaumont v. Basham*, 205 S.W.3d 608, 619 (Tex. App.—Waco 2006, *pet. denied*). For example, for claims of conversion of property, this may be determined by the fair market value of the property at the time of the taking as "based on a definitive standard and established with a reasonable degree of certainty." *In re TXCO Res., Inc.*, 475 B.R. 781, 834 (Bankr. W.D. Tex. 2012); *see R.J. Suarez Enterprises Inc. v. PNYX L.P.*, 380 S.W.3d 238, 242 (Tex. App.—Dallas 2012, *no pet.*).

**B.** **Plaintiff Fails To Conclusively Prove Its Claim Under The TEXAS THEFT LIABILITY ACT.**

28. Here, Plaintiff fails to conclusively prove each and every element of its claim against Defendant C.Fultz under the TEXAS THEFT LIABILITY ACT. Thus, Plaintiff's Motion must be denied.

### *1.* *Plaintiff did not have a possessory right to the allegedly stolen property.*

29. Here, Defendants C.Fultz and J.Fultz, not Plaintiff, were the parties with the greater possessory interest in the complained-of property – at all times they were the parties who managed the company and assets, including actual operations. On the other hand, Third-Party Defendants never had any such interest and, in fact, rarely, if ever had any involvement in the operations of the company. Indeed, on multiple occasions failed to even perform the job they had in relation to the company, such as Third-Party Defendant Witt's failure to file necessary tax documents.

30. Moreover, the title and position within the company held out to others for Defendant C.Fultz was that of owner, meaning he has full right to manage the property. This was no less obvious when, after approaching Third-Party Defendant Killough, Defendant C.Fultz was simply

told to do what was necessary for the company, which resulted in Defendant C.Fultz moving the property to save the company costs on overhead. Further, despite filing this suit and alleging the property was stolen, Third-Party Defendants continually confirmed Defendant C.Fultz was the person with the possessory interest in the property and, in fact, sought to sell their shares of the company to Defendant C.Fultz so that he would simply own it all outright.

31. This is also confirmed by the control, by Defendants C.Fultz and J.Fultz of the website, social media, and related content, which was entirely under their control. Indeed, Third-Party Defendants were required to seek permission from Defendant C.Fultz in order to access documents, as Defendants C.Fultz and J.Fultz were the parties who created and managed those documents.

32. Additionally, even assuming, arguendo, that Plaintiff had some possessory interest beyond the fact that Defendant C.Fultz and J.Fultz created them for Plaintiff, the facts are clear that Defendant C.Fultz was an owner, and, thus, any possessory interest of Plaintiff was at least one-third granted to Defendant C.Fultz. As such, Plaintiff cannot contest the possession and use of its property by its very owner, Defendant C.Fultz. In other words, Plaintiff is not the correct party to make any claim against its owner for management of its property without a showing of some improper fiduciary breach or similar separate cause. Here, all that occurred was the management of the assets of Plaintiff by one of its owners, Defendant C.Fultz.

33. Therefore, Defendants C.Fultz and J.Fultz, not Plaintiff or Third-Party Defendants, had the greater possessory interest of the property. Thus, Plaintiff has failed to conclusively prove it had a greater possessory interest than Defendant C.Fultz, and, at a minimum, a genuine issue of material fact exists regarding same. Plaintiff's Motion must be denied for this reason.

**2.    Defendant C.Fultz did not unlawfully appropriate any allegedly stolen property without Plaintiff's effective consent.**

34.   Not only was Defendant C.Fultz's possession and use of the property proper as an owner of Plaintiff, it was done with the express permission and authorization of at least Third-Party Defendant Killough. Moreover, even following Defendant C.Fultz moving the property to save the company rental overhead, Third-Party Defendants continued to act as if Defendant C.Fultz was properly managing the property. Indeed, they even worked with Defendant C.Fultz during the time he moved the property, as they clearly understood the need for the move.

35.   Therefore, any management of the property by Defendant C.Fultz was not unlawful or without consent – in fact, it was with express consent. Thus, Plaintiff has failed to conclusively prove that Defendant C.Fultz unlawfully appropriated the property without Plaintiff's consent, and, at a minimum, a genuine issue of material fact exists regarding same. Plaintiff's Motion must be denied for this reason.

**3.    Defendant C.Fultz did not have an intent to deprive Plaintiff regarding any allegedly stolen property.**

36.   At no point, especially at the time the property was moved, did Defendant C.Fultz have any intent to deprive Plaintiff of any property. To the contrary, as expressly known and approved by Third-Party Defendants, Defendant C.Fultz moved the property in the interest of Plaintiff, and, thus, could not have deprived Plaintiff of any property. Indeed, even after moving the property, Defendant C.Fultz continued to use the property for Plaintiff's interest, meaning Defendant C.Fultz's intent was fully to maintain Plaintiff's property rather than potentially losing the property in a dispute over lack of affordability of a lease.

37. Further, while Third-Party Defendants knew this, and this knowledge is, of course, imputed on Plaintiff as they are co-owners of Plaintiff, they simply refused to actually discuss why Defendant C.Fultz moved the property. Although Third-Party Defendants clearly already knew the

P a g e  **15 | 18**

[DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]                                    Case No.: 4:24-CV-01753-AHB

reason, had they took the additional step of ever talking to Defendant C.Fultz, they would have understood that there was no intent by Defendant C.Fultz to deprive Plaintiff of any property.

38.   Therefore, any alleged appropriation of property by Defendant C.Fultz was not done with any intent to deprive Plaintiff of the property, but, rather, to save Plaintiff overhead costs – a fact of which Third-Party Defendants, and, thus, Plaintiff, were well aware. Thus, Plaintiff has failed to conclusively prove that Defendant C.Fultz had an intent to deprive Plaintiff of any property, and, at a minimum, a genuine issue of material fact exists regarding same. Plaintiff's Motion must be denied for this reason.

### 4.   *Plaintiff did not sustain damages from any alleged theft.*

39.   As Plaintiff never actually lost any property, including because Defendant C.Fultz never altered possession from Plaintiff and, in fact, continued using the property for the benefit of Plaintiff until he was forced out of the company. As such, Plaintiff cannot be said to have suffered any damages. The only damages argued by Plaintiff in its Motion are the pure economic damages for the costs of the property. The fact the property remained with Defendant C.Fultz, an owner of Plaintiff, and a party to whom Third-Party Defendants have continued to try and sell the remainder of Plaintiff, clearly indicates no damages have been suffered.

40.   Therefore, any alleged damages to Plaintiff are non-existent. Thus, Plaintiff has failed to conclusively prove that Plaintiff has suffered any damages, and, at a minimum, a genuine issue of material fact exists regarding same. Plaintiff's Motion must be denied for this reason.

### VI. CONCLUSION AND PRAYER FOR RELIEF

NOW WHEREFORE, for at least those reasons stated in this response, Plaintiff has failed to meet its burden on summary judgment, and, thus, Defendants hereby respectfully request this Honorable Court deny Plaintiff's Motion in its entirety. Defendants pray for such other and further relief, whether general or special, at law or in equity, to which Defendants may be shown to be

P a g e  **16 | 18**

[DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]                                                    Case No.: 4:24-CV-01753-AHB

justly entitled.

DATED: August 28, 2025    Respectfully submitted,

              Mousilli Law, PLLC

       BY: */s/ Shea N. Palavan*
           Shea N. Palavan
            TX Bar No. 24083616
            SDTX Bar No. 1692329
           Lema Mousilli
            TX Bar No. 24056016
            SDTX Bar No. 1358290
           11807 Westheimer Road
           Suite 550, PMB 624
           Houston, Texas 77077
           Tel: (281) 305-9313
           service@mousillilaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service on this August 28, 2025, via electronic filing manager as follows:

Kevin Pennell
**PENNELL LAW FIRM PLLC**
24 Greenway Plaza, Suite 500
Houston, Texas 77046
Tel: (281) 813-8959
service@justwynnelaw.com

Attorney for Plaintiff, Shield Industrial Coatings, LLC
and
Third-Party Defendants / Cross-Defendants Michael Witt and Kraig Killough