4:24-CV-01753-AHB
Defendants
EXHIBIT
2
___

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SHIELD INDUSTRIAL COATINGS, LLC,** | § | |
| *Plaintiff/Counter-Defendant*, | § | |
| | § | |
| **V.** | § | |
| | § | |
| **SHIELD LINERS, LLC, COLTON W. FULTZ, and JESSICA FULTZ,** | § | CIVIL CASE NO. 4:24-CV-01753-AHB |
| *Defendants/Counter-Plaintiffs/Cross-Plaintiffs*, | § | |
| | § | **(JURY DEMANDED)** |
| **V.** | § | |
| | § | |
| **MICHAEL WITT and KRAIG KILLOUGH,** | § | |
| *Third-Party Defendants/Cross-Defendants*. | § | |

---

**DECLARATION OF COLTON W. FULTZ IN SUPPORT OF
DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40)
SHIELD INDUSTRIAL COATINGS, LLC'S MOTION FOR SUMMARY JUDGMENT**

---

I, Colton W. Fultz, hereby declare the following, which is true and correct based on my personal knowledge, or, where stated, based on information and belief:

1. My name is Colton W. Fultz, and I am a party to this action, a founder and owner of Plaintiff, Shield Industrial Coatings, LLC ("**Plaintiff**"), and a founder and owner of Defendant, Shield Liners, LLC ("**Shield Liner**"). I assert the facts set forth herein, which are true and correct based on my personal knowledge, unless specifically stated as based on information and belief, and, if called as a witness, I could, and would, competently testify thereto.

2. I submit this declaration in support of Defendants/Counter-Plaintiffs, Shield Liner, LLC, Colton W. Fultz ("**C.Fultz**"), and Jessica Fultz's ("**J.Fultz**") (collectively, "**Defendants**"),

Response to (D.I. 40) Shield Industrial Coatings, LLC's Motion for Summary Judgment ("**Motion**").

3. In mid-to-late 2021, after becoming friends with two other individuals in my neighborhood, Third-Party Defendants/Cross-Defendants, Michael Witt ("**Witt**") and Kraig Killough ("**Killough**") (collectively, "**Third-Party Defendants**"), I decided to go into business with them, and I asked for the assistance of these two new friends. This new business was to be Shield Industrial Coatings, LLC, and the company was officially formed and filed as a Texas LLC in August of 2021. The company was to be operated for at least the purposes of manufacturing and supplying a polyurea chemical solution to customers (primarily in the oil and gas, automotive, and construction industries) for use as a durable, quick-acting protective coating. Among its various applications, this polyurea solution can be applied to products and equipment (such as chemical tanks and containment basins, automobile liners and trailers, and indoor and outdoor flooring) to protect against corrosion, abrasions, and slips-and-falls.

4. As part of the discussions with Third-Party Defendants, we decided to form the entity with equal shares of the company, with Third-Party Defendant Witt, Third-Party Defendant Killough, and myself. As part of the agreement, after several months of discussion and planning, I was chosen to act as the operator of the company who would run the operations of Plaintiff as an equal one-third owner of the company, Third-Party Defendant Witt would act as the managing member of Plaintiff as an equal one-third owner of the company, and Third-Party Defendant Killough would primarily serve as the financial backer of the company as an equal one-third owner of the company.

5. Despite the equal one-third ownership of each party, we agreed that I would be the only owner to earn a salary, at an agreed-upon rate of $90,000. This amount was based on the salary I

had at my position at Marvel Industrial Coatings prior to forming Plaintiff of approximately $130,000, as set forth in the pay stubs that I showed to Third-Party Defendant Killough during the discussions. The $130,000 yearly earning actually represented one of my lowest years, as it was during the onset of COVID in 2020. Thus, not only did the agreed-upon $90,000 salary represent a reduction in the pay I was currently receiving at the time, but it was still a $40,000 reduction from my lowest amount earned. My expectation was that my share of the profits from this new venture would compensate for this temporary reduction.

6. Shortly after leaving my prior job in February 2021 to fully commit to Plaintiff, my wife, Defendant J.Fultz, began assisting me in running the company, including working full-time in marketing and secretarial roles for Plaintiff, without compensation. In addition to our sweat-equity, my wife and I invested personal funds into setting up the office for Plaintiff and purchasing some of the necessary equipment. At the beginning, the office and work location for Plaintiff so that the company initially operated from an office space shared with Third-Party Defendant Witt's other company, ARW Off-Road.

7. In March of 2021, J.Fultz began assisting C.Fultz and worked full-time in marketing and secretarial roles for Plaintiff, without compensation. Both invested personal funds into setting up the office and purchasing necessary equipment. Throughout 2021, both my wife and I worked tirelessly to grow the business, with my wife taking on a nursing contract again in August of 2021 to alleviate financial strain while still supporting Shield Industrial. Unfortunately, I was never paid my full salary. *See* **Exhibit A**; **Exhibit B**.

8. During my tenure at Plaintiff, I never an employee of Plaintiffs, but, rather, was, at a minimum, a member and officer. Throughout my tenure as a member-owner of Plaintiff, I was presented as an owner to outside parties by Third-Party Defendants, I was interacted with as an

owner by both Third-Party Defendants and outside parties, I had access to sensitive documents and records as an owner, and I was assured repeatedly by each of Third-Party Defendants that I was an owner. In fact, due to my experience in the field, and the lack of experience in the field of each of Third-Party Defendants, I was tasked with doing everything necessary to actually run the business. Third-Party Defendants, and, thus, Plaintiff, relied on me almost entirely, and Third-Party Defendants were essentially only tasked with funding the company and managing the company. I was also held out as Chief Operations Officer for Plaintiff, and officer in the company with significant operational authority.

9.   Among the many roles and responsibilities I had at the company, I was the sole operate and Chief Operations Officer with a $90,000 agreed-upon salary. However, on my knowledge of, and experience in, the industry, this was well-below the average salary in the industry, which ranges from $180,000 to over $440,000 per year for the same position.

10.     I also served as the lead technician and service technician for the company. Based on my knowledge of, and experience in, the industry, these services would be valued at a rate of $750 per day. This was a job that I performed at least fifty percent (50%) of the time I worked for the company during the period of approximately August 2020 to August 2023, resulting in approximate amount of around $292,500 if assuming a five (5) day work week during this period. However, this is a minimum, as many weeks I worked more than five (5) days and does not include any amounts for accommodations to which I would have been entitled in this position.

11.     I also served as the main salesperson for the company. Based on my knowledge of, and experience in, the industry, these services would be valued with a base commission on all sales of between ten to twenty percent (10-20%). During my time at the company, there was an average minimum of $3,000 in sales per week, meaning I would have been entitled to $300 per week, or,

in total, a minimum of $46,800 at the minimum ten percent (10%) rate. In reality, this amount would be much higher, as sales were often higher than this minimum average.

12.    I also served as the bedliner technician for the company. This included my traveling from locations like Alvin, Texas to Sprint, Texas weekly to spray bedliners for Third-Party Defendant Killough's dealership, but I was never paid for these services. I also coated Third-Party Defendant Witt's RV roof without being paid. Based on my knowledge of, and experience in, the industry, these services would be valued at $25 per hour with an average spray time of two to three (2-3) hours. This means, at a minimum, excluding travel time, which could vary depending on locations and traffic, I spent approximately 320 hours acting in this role, resulting in a total of $8,000 of unpaid wages.

13.    I also served as the manager of our freight and logistics. This included me setting up freight for the company under Third-Party Defendant Witt's broke account, which would result in him earning ten percent (10%) of every shipment made for import and export.

14.    I also served in an administrative role, including billing, creating invoices, taking payments, making payments, cutting checks, establishing new accounts, managing Quickbooks, and setting up the office, documents, filings, billing, logistics, and cleaning. Despite my low salary of $90,000 as an officer, this amount did not cover these responsibilities. Based on my knowledge of, and experience in, the industry, the average office administrator would be paid a salary of $60,000 per year.

15.    Additionally, in order to confirm my member-owner position in the company, prior to leaving my prior job in early 2021, I was shown a contract by Third-Party Defendant Witt setting forth my equal one-third interest on his computer. When I asked if it was ready to be signed, Third-Party Defendant Witt noted that he needed to make some additional redlines, but would send the

updated version. However, despite multiple requests for the updated version, I never received any updated version.

16.      Even though I never received any updated contract, on May 13, 2021, Third-Party Defendant Killough confirmed the ownership model of Plaintiff, including my equity interest and salaried nature with the company via group message between myself and each of Third-Party Defendants. *See* **Exhibit C**. As set forth the messages, the model included immediate one-third ownership (now, inexplicably reduced to 30% without my approval) and an opportunity for additional immediate income due to my industry experience and sales. *Id*. This group text included Third-Party Defendant Witt, who confirmed the agreement. Further, on the same day, after Third-Party Defendant made statements in a text message regarding commission-based pay that undermined my interest in the company, I was prompted to reiterate that I was told otherwise and began questioning how my ownership interest was being treated. *See* **Exhibit D**.

17.      Later in 2021, I took charge in relocating the company to a new office within the same business center, and noticed that Third-Party Defendant Witt continued to allocate funds from Plaintiff to cover the rent for his unrelated business, ARW Off-Road, without the knowledge of myself or Third-Party Defendant Killough. I was only able to uncover this financial impropriety during a review of QuickBooks transactions for the company.

18.      By mid-2022, financial pressure mounted as my payments from Plaintiff ceased and my wife's nursing income became the household's sole support. Despite these challenges, my wife and I continued to invest time and money into the business. Moreover, during this time, I started to become more aware of Third-Party Defendant Witt's impropriety and failure to do his job, including failing to properly file tax paperwork, which resulted in the forfeiture of the company in 2022.

19.    In the spring of 2023, Third-Party Defendant Witt unfortunately suffered a severe traumatic brain injury because of an accidental workplace fall and, based on information and belief, was medically required to stay in the hospital for several weeks and was unable to return to the workplace for several months while he recuperated from his injuries. During this lengthy recuperation period, as owner of Plaintiff, I served as the sole de facto manager and officer for Plaintiff, as there was no other person to take this role. Based on information and belief, Third-Party Defendant Witt was injured when he fell from his trailer at a Jeep event in Moab and returned home quickly. Based on information and belief, despite this injury, he went on vacation with his family on June 20, 2023 and again on July 4, 2023 during his alleged 'recuperation' period. This further cemented that Third-Party Defendant Witt simply disregarded any of his obligations to the company, including never coming to the office and never checking in.

20.    During this time, I contacted Third-Party Defendant Killough to inform him of these improprieties and concerns regarding the finances of the company. Specifically, I noted that the costs for rent were becoming unmanageable and it would be a good idea if the company moved locations. Third-Party Defendant appeared to not really care and just told me to do what I needed to handle things. By this point, it had been months since I had last received my agreed-upon salary payment. My payments were stopped by Third-Party Defendant Witt without any explanation or notice given until I eventually confronted him about the missed payments. Despite this, I continued to work alongside my wife to increase profitability so the business I had worked so hard for could hopefully afford to continue making my salary payments and, if possible, make payments from profit shares.

21.    Thus, in order to reduce costs, my wife and I began relocating the company property, purchased with funds the company made solely from the work I performed, to a new

location my wife and I had just purchased, where there would not be any rent to pay, thus reducing the company's overhead. During this time, both Third-Party Defendants worked with me to relocate the property. It was my understanding, based on information and belief, that, although Plaintiff's property was able to be removed from the shared location, Third-Party Defendant Witt was unable to leave the lease because his brother had damaged the door and his other company was required to pay for it.

22.    It was not until July 2023, when disagreements started to arise between myself and Third-Party Defendants over office space and operational support, that Third-Party Defendants ceased this amicable assistance. Despite being aware of the relocation, on July 25, 2023, I exchanged text messages with Third-Party Defendants where they accused me of stealing the property. *See* **Exhibit E**. In response, I indicated that they knew that there was no robbery, and that I was "working on a set up that will help me get things done more efficiently" and that I could better explain if they would simply talk to me in person. *See id*. During this time, Third-Party Defendant Killough texted me regarding selling the entire company to me, and allowing me to keep the name and continue operations. *See* **Exhibit F**.

23.    Although, at times, Third-Party Defendants would resurface to try and see if my wife and I were still spraying at Third-Party Defendant Killough's dealership in Alvin, Texas, and even try to send us business. Third-Party Defendant Witt even contacted me to give condolences following the passing of my father. Third-Party Defendant Killough continued to communicate with me, attempting to sell the company to me.

24.    Only when Third-Party Defendant Killough began drafting a proposal with his attorney was it stated that I, in fact, was never given any legal ownership in the company. At that point, I stopped communicating with Third-Party Defendants, and there were no real efforts by

them to obtain any of the equipment they now allege belongs to them. Rather, at that point, most of the equipment and office supplies were already fully within the possession of my wife and I, who were continuing to operate the company.

25.    Rather than work with me at all, they decided to file suit against me. Notably, due to the fact that the company ran almost entirely off of my work and Third-Party Defendant Witt failed to act in the interest of the company, the company failed soon after I was forced to leave in late 2023. In fact, as of today, without my services, or my wife's services, the company no longer exists. On information and belief, I understand that the company has, again, been forfeited for failure to properly file tax documents.

26.    Attached hereto as Exhibit A is a true and correct copy of a my Form W-2 Wage and Tax Statement for 2021 from Plaintiff, as produced by Defendants and served on Plaintiff and Third-Party Defendants in this case on February 21, 2025 as documents Bates labeled SLP-000022-SLP-000022.

27.    Attached hereto as Exhibit B is a true and correct copy of a my Form W-2 Wage and Tax Statement for 2022 from Plaintiff, as produced by Defendants and served on Plaintiff and Third-Party Defendants in this case on February 21, 2025 as documents Bates labeled SLP-000023-SLP-000023.

28.    Attached hereto as Exhibit C is a true and correct copy of a screenshot of text messages exchanged on May 13, 2021 in a group chat between myself and both of Third-Party Defendants, as produced by Defendants and served on Plaintiff and Third-Party Defendants in this case on February 21, 2025 as documents Bates labeled SLP-000036-SLP-000037.

29.    Attached hereto as Exhibit D is a true and correct copy of a screenshot of text messages exchanged on May 13, 2021 between myself and Third-Party Defendant Witt, as

produced by Defendants and served on Plaintiff and Third-Party Defendants in this case on February 21, 2025 as documents Bates labeled SLP-000039-SLP-000040.

30.     Attached hereto as Exhibit E is a true and correct copy of a screenshot of text messages exchanged on July 25, 2023 between myself and both of Third-Party Defendants, as produced by Defendants and served on Plaintiff and Third-Party Defendants in this case on February 21, 2025 as documents Bates labeled SLP-000012-SLP-000013.

31.     Attached hereto as Exhibit F is a true and correct copy of a screenshot of text messages exchanged between July 31, 2023 and December 20, 2023 between myself and Third-Party Defendant Killough, as produced by Defendants and served on Plaintiff and Third-Party Defendants in this case on February 21, 2025 as documents Bates labeled SLP-000014-SLP-000015.

I declare under penalty of perjury under the laws of the State of Texas and the United States of America that the foregoing is true and correct, and that this declaration is executed on August 28, 2025, at Conroe, Montgomery County, Texas.

_____

Colton W. Fultz