IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHIELD INDUSTRIAL COATINGS, LLC,<br>   *Plaintiff/Counter-Defendant*,<br><br>V.<br><br>SHIELD LINERS, LLC, COLTON W. FULTZ, and JESSICA FULTZ,<br>   *Defendants/Counter-Plaintiffs/Cross-Plaintiffs*,<br><br>V.<br><br>MICHAEL WITT and KRAIG KILLOUGH,<br>   *Third-Party Defendants/Cross-Defendants*. | § § § § § § § § § § § § § § § § § | CIVIL CASE NO. 4:24-CV-01753-AHB<br><br>(JURY DEMANDED) |

**DECLARATION OF JESSICA FULTZ IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATINGS, LLC'S MOTION FOR SUMMARY JUDGMENT**

I, <u>Jessica Fultz</u>, hereby declare the following, which is true and correct based on my personal knowledge, or, where stated, based on information and belief:

1. My name is Jessica Fultz, and I am a party to this action, a founder and owner of Plaintiff, Shield Industrial Coatings, LLC ("**Plaintiff**"), and a founder and owner of Defendant, Shield Liners, LLC ("**Shield Liner**"). I assert the facts set forth herein, which are true and correct based on my personal knowledge, unless specifically stated as based on information and belief, and, if called as a witness, I could, and would, competently testify thereto.

2. I submit this declaration in support of Defendants/Counter-Plaintiffs, Shield Liner, LLC, Colton W. Fultz ("**C.Fultz**"), and Jessica Fultz's ("**J.Fultz**") (collectively, "**Defendants**"),

[DECLARATION OF JESSICA FULTZ IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]

Page 1 | 7

Case No.: 4:24-CV-01753-AHB

Response to (D.I. 40) Shield Industrial Coatings, LLC's Motion for Summary Judgment ("**Motion**").

3. In mid-to-late 2021, after becoming friends with two other individuals in our neighborhood, Third-Party Defendants/Cross-Defendants, Michael Witt ("**Witt**") and Kraig Killough ("**Killough**") (collectively, "**Third-Party Defendants**"), my husband, Defendant C.Fultz, decided to go into business with them. This new business was to be Shield Industrial Coatings, LLC, and the company was officially formed and filed as a Texas LLC in August of 2021. The ownership of the company was equal one-third shares, with my husband to act as the operator of the company who would run the operations of Plaintiff as an equal one-third owner of the company, Third-Party Defendant Witt to act as the managing member of Plaintiff as an equal one-third owner of the company, and Third-Party Defendant Killough to primarily serve as the financial backer of the company as an equal one-third owner of the company.

4. Shortly after my husband left his job in February 2021 to fully commit to Plaintiff, I began assisting him in running the company, including working full-time in marketing and secretarial roles for Plaintiff, without compensation. In addition to our sweat-equity, my husband and I invested personal funds into setting up the office for Plaintiff and purchasing some of the necessary equipment. At the beginning, the office and work location for Plaintiff so that the company initially operated from an office space shared with Third-Party Defendant Witt's other company, ARW Off-Road.

5. In March of 2021, I began assisting my husband full-time in marketing and secretarial roles for Plaintiff, without compensation. Throughout 2021, both my husband and I worked tirelessly to grow the business, and I took on a nursing contract again in August of 2021 to alleviate financial strain while still supporting Plaintiff.

[DECLARATION OF JESSICA FULTZ IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]

Page **2** | 7

Case No.: 4:24-CV-01753-AHB

6. As part of my role and responsibilities at the company, I created documents for the company, including, but not limited to, a leads sheet, vendors log, sponsorship contract, and similar documents. I also created marketing material for the company, created all social media accounts and related content, including photography, content creation, flyers, logo design, graphic design, merch designs, and merch printing. I also helped with administrative duties, such as email responses, creating invoices, reaching out for payments, creating a Google drive for all documents created for the business, and cleaning. I also assisted in sales by making sales calls, setting up sales meetings, and doing drop-in visits at local businesses. I also provided physical labor alongside my husband to help set up the bedliner booth at Third-Party Defendant Killough's dealership, and I helped my husband prep to spray bedliners and spent many long hours in the shop helping him spray or repair machines. I also assisted with logistics, setting up freight, and even helped my husband physically unload a truckload of pallets of chemical drums along with other physical labor as needed.

7. Based on my experience in the industry, and research of positions, the median annual salary for a marketing manager is approximately $161,030 as of May 2024, according to the Bureau of Labor Statistics (BLS). I spent approximately sixty percent (40%) of my time while working at the company performing these tasks, meaning during my full tenure between approximately March of 2021 through August of 2023, I would be entitled to an amount of $155,662.33 for this role.

8. Based on my experience in the industry, and research of positions, the average rate for a bedliner technician is $25 per hour. This means, at a minimum, with an average spray time of two to three (2-3) hours, but excluding travel time, which could vary depending on locations and traffic, I spent approximately 120 hours acting in this role, resulting in a total of $3,000 of unpaid wages.

9. Based on my experience in the industry, and research of positions, the average salary for

Page 3 | 7

[DECLARATION OF JESSICA FULTZ IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]   Case No.: 4:24-CV-01753-AHB

an executive assistant varies significantly, but generally falls between $63,000 and $65,000 per year in the United States, with Texas averaging around $64,000. I spent approximately sixty percent (60%) of my time while working at the company performing these tasks, meaning during my full tenure between approximately March of 2021 through August of 2023, I would be entitled to an amount of $92,800 for this role.

10. My duties at the company also included the creation of the website, with the domain and website created by Ten Peaks Media based on information and designs provided by myself and my husband. The domain was hosted on the registrar GoDaddy and managed by Ten Peaks Media under authority of myself and my husband.

11. Further, I helped my husband set up a Google Drive for the company, with my husband as the owner of the documents on the drive. This meant that my husband was in charge of those documents, and Third-Party Defendants were required to request access if they wished to interact with any of these documents. *See* **Exhibit G**.

12. By mid-2022, financial pressure mounted as my husband stopped receiving payments from Plaintiff and my nursing income became the household's sole support. Despite these challenges, my husband and I continued to invest time and money into the business.

13. In the spring of 2023, Third-Party Defendant Witt unfortunately suffered a severe traumatic brain injury because of an accidental workplace fall and, based on information and belief, was medically required to stay in the hospital for several weeks and was unable to return to the workplace for several months while he recuperated from his injuries. During this lengthy recuperation period, as owner of Plaintiff, my husband served as the sole de facto manager and officer for Plaintiff, as there was no other person to take this role. Based on information and belief, Third-Party Defendant Witt was injured when he fell from his trailer at a Jeep event in Moab and

Page 4 | 7

[Declaration of Jessica Fultz in Support of Defendants/Counter-Plaintiffs' Response to (D.I. 40) Shield Industrial Coating, LLC's Motion for Summary Judgment]   Case No.: 4:24-CV-01753-AHB

returned home quickly. Based on information and belief, despite this injury, he went on vacation with his family on June 20, 2023 and again on July 4, 2023 during his alleged 'recuperation' period. This further cemented that Third-Party Defendant Witt simply disregarded any of his obligations to the company, including never coming to the office and never checking in.

14. During this time, the costs for rent were becoming unmanageable and my husband decided it would be a good idea if the company moved locations. When approached with the issues, Third-Party Defendant Killough appeared to not really care and just told my husband to do what he needed to handle things. By this point, it had been months since my husband had last received his agreed-upon salary payment until he eventually confronted Third-Party Defendant Witt about the missed payments. Despite this, I continued to work alongside my husband to increase profitability so the business we had worked so hard for could hopefully afford to continue making my husband's salary payments and, if possible, make payments from profit shares and alleviate our financial burdens.

15. Thus, in order to reduce costs, my husband and I began relocating the company property, purchased with funds the company made solely from the work my husband performed, to a new location my husband and I had just purchased, where there would not be any rent to pay, thus reducing the company's overhead. During this time, both Third-Party Defendants worked with my husband and myself to relocate the property. It was our understanding, based on information and belief, that, although Plaintiff's property was able to be removed from the shared location, Third-Party Defendant Witt was unable to leave the lease because his brother had damaged the door and his other company was required to pay for it.

16. It was not until July 2023, when disagreements started to arise between my husband and Third-Party Defendants over office space and operational support, that Third-Party Defendants

[Declaration of Jessica Fultz in Support of Defendants/Counter-Plaintiffs' Response to (D.I. 40) Shield Industrial Coating, LLC's Motion for Summary Judgment]

Page **5 | 7**

Case No.: 4:24-CV-01753-AHB

ceased this amicable assistance.

17. Although, at times, Third-Party Defendants would resurface to try and see if my husband was still spraying at Third-Party Defendant Killough's dealership in Alvin, Texas, and even try to send us business. Third-Party Defendant Witt even contacted my husband to give condolences following the passing of my husband's father. Third-Party Defendant Killough continued to communicate with my husband, attempting to sell the company to my husband.

18. Only when Third-Party Defendant Killough began drafting a proposal with his attorney was it stated that my husband, in fact, was never given any legal ownership in the company. At that point, we stopped communicating with Third-Party Defendants, and there were no real efforts by them to obtain any of the equipment they now allege belongs to them. Rather, at that point, most of the equipment and office supplies were already fully within the possession of my husband and myself, who were continuing to operate the company.

19. Rather than work with us, Third-Party Defendants decided to file suit against us. Notably, due to the fact that the company ran almost entirely off of my husband's work and Third-Party Defendant Witt failed to act in the interest of the company, the company failed soon after my husband was forced to leave in late 2023. In fact, as of today, without his services, or my services, the company no longer exists. On information and belief, I understand that the company has, again, been forfeited for failure to properly file tax documents.

20. Attached hereto as Exhibit G is a true and correct copy of screenshots of a document in the company's Google Drive, which was owned by my husband, and a request by Third-Party Defendant Witt requesting access to a document on May 3, 2023, as produced by Defendants and served on Plaintiff and Third-Party Defendants in this case on February 21, 2025 as documents Bates labeled SLP-000072-SLP-000074.

Page **6 | 7**

[Declaration of Jessica Fultz in Support of Defendants/Counter-Plaintiffs' Response to (D.I. 40) Shield Industrial Coating, LLC's Motion for Summary Judgment]

Case No.: 4:24-CV-01753-AHB

I declare under penalty of perjury under the laws of the State of Texas and the United States of America that the foregoing is true and correct, and that this declaration is executed on August 28, 2025, at Conroe, Montgomery County, Texas.

_____
Jessica Fultz

Page 7 | 7

[DECLARATION OF JESSICA FULTZ IN SUPPORT OF DEFENDANTS/COUNTER-PLAINTIFFS' RESPONSE TO (D.I. 40) SHIELD INDUSTRIAL COATING, LLC'S MOTION FOR SUMMARY JUDGMENT]   Case No.: 4:24-CV-01753-AHB