IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHIELD INDUSTRIAL COATINGS, LLC, | § | |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| | § | |
| V. | § | |
| | § | |
| SHIELD LINERS, LLC, COLTON W. FULTZ, and JESSICA FULTZ, | § | CIVIL CASE NO. 4:24-CV-01753-AHB |
| *Defendants/Counter-Plaintiffs/Cross-Plaintiffs,* | § | |
| | § | (JURY DEMANDED) |
| | § | |
| V. | § | |
| | § | |
| MICHAEL WITT and KRAIG KILLOUGH, | § | |
| *Third-Party Defendants/Cross-Defendants.* | § | |
| | § | |

---

## [~~PROPOSED~~DRAFT]
## JURY CHARGE

---

~~COME NOW, Defendants/Counter-Plaintiffs, Shield Liners, LLC ("Shield Liners"), Colton W. Fultz ("C.Fultz"), and Jessica Fultz's ("J.Fultz") (collectively, "Defendants"), in the above-styled and numbered cause, and, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 51 and this Court's Orders, Rules, and Schedule, respectfully file this *[Proposed] Jury Charge*:~~Plaintiff submits this proposed jury charge with the joint pretrial order. Plaintiff submitted draft questions and instructions to Defendants, who in turn responded. All redlines are made by Plaintiff to the version received from Defendants. If not redlined, plaintiff does not object to the draft received from Defendants. All parties reserve the right to supplement and amend these proposed instructions and questions and to submit additional proposed instructions and questions based on this Court's rulings before and/or at trial, or otherwise, as appropriate.

<u>P<small>RELIMINARY</small> I<small>NSTRUCTIONS</small></u>

***1.1 Instructions for Beginning of Trial***

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off. Do not turn it to vibrate or silent; power it down. During jury selection, you must leave it off.

The Sixth Amendment of our Constitution guarantees a trial by an impartial jury. There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate. I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court. You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, [claims] [charges], evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If

you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination. It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case. Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice. It is very important that you abide by these rules. Failure to follow these instructions could result in the case having to be retried.

I hope that for all of you this case is interesting and noteworthy.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

*1.2 Preliminary Instructions to Jury*

**MEMBERS OF THE JURY:**

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with

anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence. After the opening statements, the plaintiff will present its case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present their case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. **Closing arguments are not evidence, but**

**rather the attorneys' interpretations of what the evidence has shown or not shown. Finally,**

**you will go into the jury room to deliberate to reach a verdict.**

**Keep an open mind during the entire trial. Do not decide the case until you have heard**

**all of the evidence, my instructions, and the closing arguments.**

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

### 1.3 Trademark Infringement – Nature of Claims and Defenses

Before the attorneys give their opening statements, to help you follow the evidence, I will now give you a summary of what this case is about.

Plaintiff in this case is Shield Industrial Coatings, LLC.

Defendants in this case are Shield Liners, LLC; Colton Fultz; and Jessica Fultz.

Third-Party Defendants in this case are Michael Witt and Kraig Killough.

Plaintiff claims that Defendants have infringed, or committed trademark infringement, false designation of origin, and unfair competition by infringing, a trademark[s] or service mark[s] owned by Plaintiff.

A trademark or a service mark is a word, symbol, or combination of words and symbols used by an individual or company to identify its products or services, to distinguish its products from those manufactured or sold by others, or to distinguish its services from those offered by others, and to indicate the source of its products or services.[1]

Defendant denies that it has infringed any of Plaintiff's trademarks or service marks or committed any acts of unfair competition by infringing any of Plaintiff's trademarks.

~~It is now time for the opening statements.~~

*Plaintiff proposes deleting this language because there are additional instructions prior to opening statements.*

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Trademark Infringement).

---

[1] 15 U.S.C. § 1127.

### 1.4 Plaintiff's Trademarks

Plaintiff claims that Defendants have infringed Plaintiff's trademarks and service marks. The trademarks at issue are: (1) a word mark of "Shield Liners" for a polyurea chemical spray on solution primarily used in the oil and gas, automotive, and construction industries, often used as a spray-on bedliner for pickup trucks; (2) a combined word and design product and service mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Liners" in all caps but smaller font printed over a black and white shield with a blue outline; and (3) a combined word and design company mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over Industrial Coatings" in all caps but smaller font over a black and white shield with a blue outline.

A trademark is a property right that is acquired by use. If through its use, a word or design comes to symbolize an individual's product or service in the public mind, the individual acquires a property right in that trademark.[2] Plaintiff bears the burden of proving it has acquired trademark rights in the trademark(s) it asserts in this case.

A trademark need not, but can be, registered with the United States Patent and Trademark Office.

Plaintiff claims that Defendants have infringed, or committed trademark infringement, false designation of origin, and unfair competition by infringing, a trademark[s] or service mark[s] owned by Plaintiff.

~~A trademark or a service mark is a word, symbol, or combination of words and symbols used by an individual or company to identify its products or services, to distinguish its products from those manufactured or sold by others, or to distinguish its services from those offered by others, and to indicate the source of its products or services.~~

---

[2] *Trade-Mark Cases*, 100 U.S. 82, 94-95 (1879); *Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1014 (5th Cir. 1975).

*Plaintiff proposes deleting this paragraph because it is duplicative but not does not feel strongly about including it.*

**Formatted:** Font: Italic

Defendant denies that it has infringed any of Plaintiff's trademarks or service marks or committed any acts of unfair competition by infringing any of Plaintiff's trademarks.

~~It is now time for the opening statements.~~

*Plaintiff proposes deleting this sentence because there are additional instructions prior to opening statements.*

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Trademark Infringement).

### *1.5 The Parties' Burdens of Proof*

*Plaintiff proposes deleting the first sentence:*

Plaintiff contends that Defendants infringe each of these marks by operating the business of Defendants using the Product Logo.

To prevail against Defendants, Plaintiff has the burden of proving, by a preponderance of the evidence, that Defendants infringe one or more of Plaintiff's marks.

Defendants deny that they infringe, but contends that, even if Plaintiff could prevail on one or more of its trademark-related claims, Plaintiff still is not entitled to any recovery or relief on any of those claims under fraud. Defendants bear the burden of proving fraud that Defendants have asserted by a preponderance of the evidence.[3]

The standard in a trademark infringement claim is "likelihood of confusion." To prevail on a claim of trademark infringement or unfair competition against Defendants, Plaintiff must prove by a preponderance of evidence that Defendants' use of its "Shield Liners" brand and "Shield Liners" logo in connection with selling its polyurea chemical solution and spray on services create a likelihood of consumer confusion as to source, affiliation, or sponsorship.[4]

Merely reproducing a trademark is not trademark infringement if there is no likelihood of confusion. A "likelihood of confusion" means that confusion is not just possible, but probable.[5][6]

---

[3] *Janes v. Watson*, No. SA-05-CA-0473, 2006 U.S. Dist. LEXIS 59004, at *50-51 (W.D. Tex. Aug. 2, 2006) (citations omitted); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 271-72 (5th Cir. 1999); Restatement (Third) of Unfair Competition § 32 & cmt. a (Am. L. Inst. 1995); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 31:44-58(4th ed. 2009).

[4] 15 U.S.C. § 1114(1); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998); *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc*., 80 F.4th 607 (5th Cir. 2023).

[5] 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25.28 (4th ed. 2009); *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co*., 550 F.3d 465, 478 (5th Cir. 2008); *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co*., 671 F.3d 526, 532 (5th Cir. 2012).

[6] The analysis with respect to plaintiff's federal and common law claims under the federal law may often be dispositive of its corresponding claims under Texas law as well. *Luxottica Grp. S.P.A. v.*

*Formatted:* Font: Italic

*Formatted:* Indent: First line: 0"

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Trademark Infringement).

---

*Atl. Sunglasses LLC*, No. 15-CV-1795, 2017 U.S. Dist. LEXIS 217991, at *19 (S.D. Tex. Mar. 24, 2017) ("The same legal standard applies to Lanham Act infringement claims, Texas statutory trademark infringement claims, Texas common-law trademark infringement claims, and federal and state unfair competition claims." (quoting *RE/MAX Int'l, Inc. v. Trendsetter Realty*, LLC, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009))); *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 636 (N.D. Tex. 2009) ("Likelihood of confusion is the central evidentiary test for infringement under the Lanham Act and unfair competition under Texas common law." (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 n.1 (5th Cir. 2000))).

## GENERAL INSTRUCTIONS

### 2.1 First Recess

We are about to take our first break in this trial. Remember, until the trial is over, you are not to discuss this case with anyone, including your fellow jurors. If anyone approaches you and tries to talk to you about the case, advise me about it immediately. Do not read or listen to any news reports of the trial or use any technology tools to do independent research. Remember to keep an open mind until all the evidence has been received. Finally, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

### 2.2 At the End of Each Day of the Case

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media and information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

*See* Federal Proposed Model Jury Instructions Regarding The Use of Electronic Technology to Learn or Communicate about a Case.

***2.3 At the Beginning of Each Day of the Case***

As I reminded you last night and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

(In Open Court): If you think you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to a member of the court's staff privately in response to this question, please do so at the next break. Thank you for your careful adherence to my instructions.

*See* Federal Proposed Model Jury Instructions Regarding The Use of Electronic Technology to Learn or Communicate about a Case.

### 2.4 Stipulated Testimony

A "stipulation" is something that the attorneys agree is accurate. When there is no dispute about certain testimony, the attorneys may agree or "stipulate" to that testimony.

Stipulated testimony must be considered in the same way as if that testimony had been received here in court.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

### *2.5 Stipulations of Fact*

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

***2.6 Limiting Instruction***

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

### *2.7 Demonstrative Evidence*

*Plaintiff proposes deleting this section as it is not believed that either party has demonstratives.*

Exhibit [specify] is an illustration. It is a party's [description/picture/model] used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

**Formatted:** Font: Italic

**Formatted:** Indent: First line: 0"

## JURY CHARGE

### *3.1 Jury Charge*

**MEMBERS OF THE JURY:**

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be

influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Throughout your deliberations, you may discuss with each other the evidence and the law that has been presented in this case, but you must not communicate with anyone else by any means about the case. You also cannot learn from outside sources about the case, the matters in the case, the legal issues in the case, or individuals or other entities involved in the case. This means you may not use any electronic device or media (such as a phone, computer, or tablet), the internet, any text or instant messaging service, or any social media apps (such as Twitter, Facebook, Instagram, LinkedIn, YouTube, WhatsApp, and Snapchat) to research or communicate about what you've seen and heard in this courtroom.

These restrictions continue during deliberations because it is essential, under our Constitution, that you decide this case based solely on the evidence and law presented in this courtroom. Information you find on the internet or through social media might be incomplete, misleading, or inaccurate. And, as I noted in my instructions at the start of the trial, even using your smartphones, tablets, and computers – and the news and social media apps on those devices – may inadvertently expose you to certain notices, such as pop-ups or advertisements, that could influence your consideration of the matters you've heard about in this courtroom.

You are permitted to discuss the case with only your fellow jurors during deliberations because they have seen and heard the same evidence and instructions on the law that you have, and it is important that you decide this case solely on the evidence presented during the trial, without undue influence by anything or anyone outside of the courtroom. For this reason, I expect

you to inform me at the earliest opportunity, should you learn about or share any information about this case outside of this courtroom or the jury room, or learn that another juror has done so.

Plaintiff in this case is Shield Industrial Coatings, LLC. Shield Industrial Coatings, LLC claims in this case that it owns certain trademarks. Those trademarks are: (1) a word mark of "Shield Liners" for a polyurea chemical spray on solution primarily used in the oil and gas, automotive, and construction industries, often used as a spray-on bedliner for pickup trucks; (2) a combined word and design product and service mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Liners" in all caps but smaller font printed over a black and white shield with a blue outline; and (3) a combined word and design company mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over Industrial Coatings" in all caps but smaller font over a black and white shield with a blue outline. I will discuss these in more detail a bit later.

Plaintiff claims that Defendants committed trademark infringement, false designation of origin, and unfair competition by using the brand name "Shield Liners" and the corresponding logos in connection with goods it has sold to consumers. Plaintiff's trademark claims arise under federal law.

Defendants deny Plaintiff's claims of trademark infringement, false designation of origin, and unfair competition. Defendants also contend that, even if Plaintiff could prevail on one or more of its trademark-related claims, Plaintiff still is not entitled to any recovery or relief on any of those claims under its affirmative defenses, including but not limited to the doctrine of fraud.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.

After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case. If you need to communicate with me during your deliberations,

the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

I will now instruct you on the law you must apply to the evidence you have heard. You may then proceed to the jury room to begin your deliberations.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases); Fifth Circuit Court of Appeals Pattern Jury Instructions (Trademark Cases); Federal Proposed Model Jury Instructions Regarding The Use of Electronic Technology to Learn or Communicate about a Case.

### 3.2 Burden of Proof: Preponderance of The Evidence[7]

Plaintiff has the burden of proving its case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff has failed to prove any element of its claim by a preponderance of the evidence, then it may not recover on that claim.

If Plaintiff prevails on any of its claims, Defendants have the burden of proving their affirmative defenses by a preponderance of the evidence.

---

[7] Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases) § 3.2 (2020)

DEFENDANTS' TRIAL EXHIBIT LIST                                   Case No.: 4:24-CV-01753-AHB

*3.3 Evidence*

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact – an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact, or series of facts, from which you can logically conclude another fact exists.

As an example, <u>direct evidence</u> that it is raining is testimony from a the witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases); Model Federal Civil Jury Instructions of the Seventh Circuit.

### 3.4 Witnesses

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

*3.5 Expert Witnesses*

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

### 3.6 No Inference from Filing Suit

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

*Plaintiff proposes including section 3.7.*

**3.7 Duty to Deliberate; Notes**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the fact. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a [jury foreperson] [presiding juror] to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your [jury foreperson] [presiding juror] must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the [jury foreperson] [presiding juror] should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep

in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

<u>**TRADEMARK**</u>

***4.1 Trademark Infringement – Nature of Plaintiff's Claims***

Plaintiff claims that, by selling polyurea chemical solution under the brand name "Shield Liners" and with the "Shield Liners" logo, Defendants infringed each of Plaintiff's trademarks for the word "Shield Liners", for its "Shield Liners" logo, and for its "Shield Industrial Coatings" logo.

The purposes of trademark law are to secure to the owner of the mark the goodwill of its business and to protect the ability of consumers to distinguish among competing producers.[8] The central question in trademark law is the likelihood of consumer confusion.

---

[8] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)*; Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985) ("The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.").

### 4.2 Trademark Infringement – Definition of a Trademark

Ownership of a trademark is established by use of the trademark and does not need to be registered in order to obtain protection.[9]

As I instructed you before trial, a trademark or service mark is a property right that is acquired by use. A trademark is any word, name, symbol, device or any combination of these things, used by a person or corporation to identify and distinguish that person's goods from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown to the consumer.[10] If through use, the word or design comes to symbolize a person's or corporation's product or service in the public mind, that person or corporation acquires a property right in the mark.[11]

Plaintiff bears the burden of proving by a preponderance of the evidence that it has acquired property rights in each trademark it asserts in this case before there can be infringement of that trademark. A trademark need not, but can be, registered with the United States Patent and Trademark Office. This is called a United States or federal trademark registration. A federal trademark registration is rebuttable evidence of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the registration.[12]

Plaintiff asserts that it is the owner of the following three trademarks:

(1) a word mark of "Shield Liners" for a polyurea chemical solution primarily used in the

      oil and gas, automotive, and construction industries, often used as a spray-on bedliner

---

[9] *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).

[10] 15 U.S.C. § 1127; *Bd. Of Supervisors for La. State Univ. Agric. & Mech. Coll. V. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008).

[11] *Trade-Mark Cases*, 100 U.S. 82, 94-95 (1879); *Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1014 (5th Cir. 1975).

[12] *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citing 15 U.S.C. § 1115(a)).

for pickup trucks;

(2) a combined word and design product mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Liners" in all caps but smaller font printed over a black and white shield with a blue outline; and

(3) a combined word and design company mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over Industrial Coatings" in all caps but smaller font over a black and white shield with a blue outline.

The following instructions on trademark infringement focus on these marks. Plaintiff must prove infringement of each asserted mark independently of the other two.

### *4.3 Trademark Infringement*[13]

Plaintiff accuses Defendant of trademark infringement based on the sale of polyurea chemical solution and spray on services to consumers under the brand name "Sheild Liners" and with the associated "Shield Liners" logos.

*Plaintiff proposes moving this section to immediately prior to the questions.*

For purposes of Plaintiff's claims of trademark infringement, the following definitions apply:

"Word Mark" means Shield Industrial Coatings, LLC's use of the words "Shield Liners" to describe a polyurea chemical solution primarily used in the oil and gas, automotive, and construction industries, often used as a spray on bedliner for pickup trucks.

"Company Logo" means Shield Industrial Coatings, LLC's combined word and design company mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Industrial Coatings" in all caps but smaller font over a black and white shield with a blue outline, as depicted below:



"Product Logo" means Shield Industrial Coatings, LLC's combined word and design product mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Liners" in all

---

[13] *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 844 (5th Cir. 1990); *Riviana Foods Inc. v. Societe Des Produits Nestle S.A.*, No. CIV.A. H-93-2176, 1994 WL 761242, at *5 (S.D. Tex. Dec. 20, 1994).

~~caps but smaller font printed over a black and white shield with a blue outline, as depicted below:~~



~~"Premises" means the office and warehouse space leased by Shield Industrial Coatings, LLC in 2023.~~

Plaintiff accuses Defendants of three different violations of its rights in each of its marks: (1) trademark infringement under federal law, (2) unfair competition under federal law, and (3) cyberpiracy under federal law. These are three theories of liability, but they each require the same proof against Defendants, and so I will instruct you on the elements only once.[14]

To prevail on a trademark infringement claim, a plaintiff must establish: (1) ownership in a legally protectable mark; and (2) infringement by demonstrating a likelihood of confusion. Ownership of a mark is established by actual use in the market.[15]

If you find that Plaintiff has proved each of these things for any trademark by a

---

[14] Infringement claims under Texas common law are analyzed under the same framework as federal trademark law. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010). Texas unfair competition claims are also governed by the likelihood of confusion standard. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 484 (5th Cir. 2004); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009); *Waterloo Sparkling Water Corp. v. Treaty Oak Brewing & Distilling Co., LLC*, No. 1:21-CV-161-RP, 2021 U.S. Dist. LEXIS 227700, at *10 (W.D. Tex. Nov. 24, 2021).

[15] *Bd. Of Supervisors for La. State Univ. Ag. & Mech. Coll. V. Smack Apparel Co.*, 550 F.3d 465, 474-475 (5th Cir. 2008); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008); *Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 194 (5th Cir. 2007) (stating "the threshold requirement that the plaintiff must possess a protectible mark, which must be satisfied before infringement can be actionable").

preponderance of the evidence, and that Defendant did not prove by a preponderance of the evidence any of its affirmative defenses such as fraud, then you must find for Plaintiff as to that trademark. However, if Plaintiff did not prove each of these things for any trademark by a preponderance of the evidence, then you must find for Defendants as to that trademark.   In addition, if you find that Defendants proved by a preponderance of the evidence any of ~~thier~~ their affirmative defenses such as fraud, then you must find for Defendants.

I will now explain what I mean by these terms.

***4.4 Trademark Infringement – Ownership of a Protectable Mark[16]***

As I have already mentioned, as to Plaintiff's "Shield Liners" word mark, its "Shield Liners" logo mark, and its "Shield Industrial Coatings" logo mark, Plaintiff must show by a preponderance of the evidence that those marks are owned by Plaintiff. Plaintiff owns rights in its common law trademarks to the extent Plaintiff used the marks in a manner that allowed consumers to identify them with Plaintiff or its products before Defendant began using the "Shield Liners" brand and logo. The parties agree that Defendant began using the "Shield Liners" brand and logos in the late spring / early summer of 2023 and that Plaintiff began using its common law trademarks before that time in early 2022.[17]

---

[16] *Nautilus Grp., Inc. v. ICON Health & Fitness, Inc., 372 F.3d 1330, 1339 (Fed. Cir. 2004); Xtreme Lashes, LLC v. Xtended Beauty, Inc., 576 F.3d 221, 227 (5th Cir. 2009); Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 237–38 (5th Cir. 2010); Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist., 912 F.3d 805, 814 (5th Cir. 2019).*
[17] *Sugar Busters LLC v. Brennan,* 177 F.3d 258, 267-68 (5th Cir. 1999); Seventh Circuit Pattern Civil Jury Instructions § 13.1.2.1.

***4.5 Trademark Infringement – Likelihood of Confusion[18]***

To prevail on its claims against Defendants, Plaintiff must prove by a preponderance of the evidence that Defendants' sale of polyurea chemical solution and spraying that chemical solution onto goods such as the beds of pickup trucks under the "Shield Liners" brand and the "Shield Liners" logo creates a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the "Shield Liners" brand.[19]

Likelihood of confusion means a probability of confusion, which is more than a mere possibility of confusion.[20][21]

In determining whether Plaintiff has proven by a preponderance of the evidence that there is a likelihood of confusion with respect to the source, affiliation, or sponsorship of the "Shield Liners" brand sold by Defendants, you should consider the following factors, known as "digits of confusion," separately as to each Defendant and separately as to each allegedly infringed mark:

1.  the type and strength of each allegedly infringed mark;

2.  the similarity between Plaintiff's and Defendant's respective marks;

3.  the similarity of the products or services supplied by Plaintiff and the product or services supplied by Defendant under their respective marks;

---

[18] *Nautilus Grp., Inc. v. ICON Health & Fitness, Inc., 372 F.3d 1330, 1339 (Fed. Cir. 2004); Xtreme Lashes, LLC v. Xtended Beauty, Inc., 576 F.3d 221, 227 (5th Cir. 2009); Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 237–38 (5th Cir. 2010); Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist., 912 F.3d 805, 814 (5th Cir. 2019).*
[19] *Springboards to Educ. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811-12 (5th Cir. 2019); *Westchester Media v. PRL USA Holdings, Inc*., 214 F.3d 658, 663 (5th Cir. 2000); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998).
[20] *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008); *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017); *Springboards to Educ. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019).
[21] Unfair competition claims and common law trademark infringement under Texas law are analyzed under the same standard as claims under the Lanham Act. For that reason, you can consider all of Plaintiff's claims under the same standard. *See RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009).

4.  the identity of retail outlets and purchasers of the products or services supplied by Plaintiff and Defendant under their respective marks;

5.  the identity of advertising media used by Plaintiff and Defendant;

6.  Defendant's intent in selecting its mark;

7.  any evidence of actual confusion caused by Defendants' use of the Product Logo; and\

8.  the degree of care exercised by potential purchasers.[22]

The weight to be given to the factors depends on the facts and circumstances of each case.[23] The absence or presence of any one of the digits does not determine whether there is, or is not, a likelihood of confusion. In some cases, a jury may find a likelihood of confusion even if it finds less than a majority of the factors.[24] In other cases, a jury may find no likelihood of confusion, even if it finds that a majority of the factors are present.[25] These digits of confusion are flexible and do not apply mechanically or to every case. These digits serve only as guides, not as an exact calculus. You must consider the application of each digit in light of the specific facts and circumstances of the evidence presented in this case, and you must consider the marks in the context that a consumer perceives them in the marketplace.[26]

You may determine how much weight to give each factor. I will discuss each of these factors in turn.

---

[22] *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 750 (5th Cir. 2022); *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 453 (5th Cir. 2017).
[23] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (quoting *Marathon Mfg., Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985) (per curiam)).
[24] *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).
[25] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).
[26] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004); *Springboards to Educ. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019) (citations omitted); *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 620 (5th Cir. 2023) ("'In addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis.'" (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485-86 (5th Cir. 2004))).

*4.6 Trademark Infringement – Strength of the Asserted Mark*[27]

In determining whether Plaintiff has proven a likelihood of confusion by a preponderance of the evidence, the first digit of confusion for you to consider is the strength of Plaintiff's alleged trademarks. The strength or distinctiveness of a mark determines the amount of protection the mark receives. Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark.[28]

A mark's strength depends on (1) the categorization or type of mark, and (2) the mark's recognition in the marketplace.[29]

Trademarks can be categorized along the following range of generally increasing strength or distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. Generic marks are the least distinctive and fanciful marks are the most distinctive.

The stronger or more distinctive the mark, the greater the likelihood that consumers will be confused and the more protection it receives. The last three categories of marks – suggestive, arbitrary and fanciful – are considered inherently distinctive marks and are entitled to protection without a showing that the marks have secondary meaning. Suggestive marks are marks that suggest an attribute of a good or service without describing it. These marks require the consumer to exercise his or her imagination to apply the trademark to the goods or services.[30]    Arbitrary

---

[27] *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980); *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 845 (5th Cir. 1990); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

[28] *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 479 (5th Cir. 2008).

[29] *Homax Prods., Inc. v. Homax, Inc.*, No. H-08-CV-01560, 2009 WL 7808951, at *6 (S.D. Tex. Aug 5, 2009); *see also Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Assn.*, 651 F.2d 311, 315 (5th Cir. 1981) ("The ultimate strength of a mark, the key inquiry before us, is determined by a number of factors which establish its standing in the marketplace.").

[30] *Springboards to Educ. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 814 (5th Cir. 2019); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

marks are marks that use ordinary words that do not suggest or describe the goods or services involved.[31] Fanciful marks are most often coined words.[32] *The parties agree that "Shield Liners" is a suggestive mark.*

A plaintiff can show that a mark is strongly recognized in the marketplace based on extensive advertising, length of time in business, public recognition, uniqueness, and the quantity of sales of the branded products.[33]

A strong trademark is one that consumers are likely to associate with the owner of the mark, and is rarely used by parties other than the trademark owner, while a weak trademark is one that is not well recognized or is often used by other parties. In short, the more distinctive a trademark, the greater its strength.

A trademark's strength is important in determining the scope of protection that it receives. The greater the number of identical or similar trademarks already used on different kinds of goods, the weaker the trademark and the lower the likelihood of confusion. You should consider all third-party use and third-party U.S. trademark registrations, and not just use in the same industry, to determine whether a mark is weak or strong.[34] A mark that is widely used on a variety of

---

[31] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

[32] *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 292 n.13 (5th Cir. 2020).

[33] *Homax Prods., Inc. v. Homax, Inc.*, No. H-08-CV-01560, 2009 WL 7808951, at *6 (S.D. Tex. 2009); *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 819-20 (S.D. Tex. 1999).

[34] *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 504 (5th Cir. 1980) (quoting Restatement (First) of Torts § 729 cmt. g (Am. L. Inst. 1938)); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980) (abandoned and expired registrations are relevant). *See also Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 848 n.24 (5th Cir 1990) (stating that, in the "likelihood of confusion analysis, the trier of fact looks at all third party use, not just use in the same industry, to determine whether a mark is a 'weak' or a 'strong' mark"); *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 621 (5th Cir. 2023); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir. 1980) ("[T]hird-party uses and registrations . . . limit the protection to be accorded plaintiff's mark outside the uses to which plaintiff has already put its mark.").

commercial goods is a weaker mark and entitled to a narrower range of protection.[35]

---

[35] *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980); *Accord Picturecode, LLC v. Dig. Ninja, LLC*, No. A-10-CA-188-LY, 2010 U.S. Dist. LEXIS 154855, at *7 (W.D. Tex. Sep. 3, 2010) ("Registration itself establishes only a rebuttable presumption of use as of the filing date." (citing <u>*Zazu Designs v. L'Oreal, S.A.*</u>, 979 F.2d 499, 504 (7th Cir. 1992))).

***4.7 Trademark Infringement – Similarity of Marks[36]***

The second digit, or factor, you may use in analyzing the likelihood of confusion is the similarity of the parties' respective marks.

The similarity of marks is determined by comparing their appearance, sound, and meaning. This factor focuses not on whether the marks are identical, but on whether they are sufficiently similar that consumers are likely to believe that Plaintiff's product is somehow associated with Defendant. A mark must be viewed in its entirety and in the context in which it is used in the marketplace, including how and where it is used on product packaging, labeling, and advertising. It is the overall impression of the mark that counts. You should not dissect the marks to compare individual features. Although more attention should be given to the dominant portion of the marks, the use of the same dominant words does not automatically equate to similarity between marks.[37] Similarity of appearance is determined on the basis of the total effect of the trademark, rather than on a comparison of individual features.[38]

---

[36] *Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 201 (5th Cir. 1998); All. for Good Gov't. v. Coal. for Better Gov't., 901 F.3d 498, 510-11 (5th Cir. 2018); Xtreme Lashes, LLC v. Xtended Beauty, Inc., 576 F.3d 221, 228 (5th Cir. 2009).*
[37] S*pringboards to Educ. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 815 (5th Cir. 2019) (citing *Sensient Techs. Corp. v. SensoryEffects Flavor Co*., 613 F.3d 754, 765 (8th Cir. 2010)).
[38] *Sun Banks of Fla. v. Sun Fed. Sav. Loan, 651 F.2d 311, 317-18 (5th Cir. 1981) (first quoting Restatement (First) of Torts § 729 cmt. b (Am. L. Inst. 1938); and then citing Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 260-61 (5th Cir. 1980) (quoting Restatement with approval)); Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 506 (5th Cir. 1979) ("It is the overall impression that counts.").*

***4.8 Trademark Infringement – Similarity of Products and Services[39]***

The third digit, or factor, to consider in analyzing likelihood of confusion is the similarity between the parties' respective products and services. The greater the similarity of the products or services, the greater the likelihood of confusion. Competition between the parties' products or services is not necessary for consumers to confuse them. When a company is diversified, that is, offers a number of different goods and services, that makes it more likely that a potential consumer would associate a non-diversified company's services with the diversified company.[40] Products that are often used or sold together, or complementary, are particularly susceptible to confusion. Products are also complementary when each product is useless without the other.[41]

Even when products or services do not compete, there can be confusion as to sponsorship, affiliation, or connection. The danger of affiliation or sponsorship confusion increases when the more recent, or junior, user's goods are in a market into which the longer-time, or senior, user would naturally expand.[42] A plaintiff can show that a defendant's products fall within its natural zone of expansion by showing that its customers believe it to be in that zone, even if that perception is false.[43]

---

[39] *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc., 628 F.2d 500, 504 (5th Cir. 1980); Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 202 (5th Cir. 1998); Viacom Int'l v. IJR Cap. Invs., L.L.C., 891 F.3d 178, 194 (5th Cir. 2018); Fuji Photo FilmSun Banks of Fla. v. Sun Fed. Sav. Loan, 651 F.2d 311, 317-18 (5th Cir. 1981).*

[40] *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 598 (5th Cir. 1985).

[41] *Id.* ("Shinohara's presses are useless without equipment and materials of the sort made by Fuji (among others); some of Fuji's products are useless without an offset press like Shinohara's.").

[42] *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs. L.L.C*., 83 F. Supp. 2d 810, 826 (S.D. Tex. 1999) (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 202 (5th Cir. 1998)).

[43] *Waterloo Sparkling Water Corp. v. Treaty Oak Brewing & Distilling Co., LLC*, 2021 U.S. Dist. LEXIS 227700, at *14-15 (W.D. Tex. Nov. 28, 2021).

*4.9 Trademark Infringement – Identity of Retail Outlets and Purchasers[44]*

      The fourth digit to consider in analyzing likelihood of confusion is whether there is overlap between the parties' retail outlets and consumers.  The greater the overlap between the parties' retail outlets and consumers, the greater the likelihood of confusion.  On the other hand, dissimilarities between the retail outlets for, and the primary consumers of, plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception.[45]

---

[44] *Viacom Int'l v. IJR Cap. Invs., L.L.C., 891 F.3d 178, 194 (5th Cir. 2018).*
[45] *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980); *GetMe, LLC v. Abello*, No. 16-CV-00111-N, 2017 U.S. Dist. LEXIS 226034, at *10 (N.D. Tex. Sep. 20, 2017).

*4.10    Trademark Infringement – Identity of Advertising Media[46]*

The fifth digit to consider in analyzing likelihood of confusion is whether the parties use the same advertising media, such as websites, social media, magazines and trade journals, trade shows.  The greater the similarity of advertising media, the greater the likelihood of confusion.

---

[46] *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 506 (5th Cir. 1980).

**4.11    Trademark Infringement – Defendants' Intent[47]**

The sixth digit to consider in analyzing likelihood of confusion is whether a defendant intended to derive benefit from the reputation of the plaintiff's products when selecting its product name.

Evidence that a defendant adopted the mark with the intent to derive benefit from the reputation of a plaintiff's products is evidence of a likelihood of confusion. But a defendant's mere awareness of the plaintiff's existing mark does not establish bad intent.[48]

Even if a defendant adopts a mark with innocent intent, you may find intent to confuse if the defendant subsequently used the mark in a way that evidenced an intent to trade on the plaintiff's reputation. Bad faith in adopting and using a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods, or other efforts by a party to "pass off" its product as that of another. A party's continued use of a mark even after it receives a cease and desist letter alleging infringement is not evidence of an intent to confuse, because that party may have considered that the allegation was without a legally supportable basis and made a rational business decision to continue use until a court stated otherwise.[49]    If there is no evidence of intent to confuse, this factor is neutral.[50]

---

[47] *All. for Good Gov't. v. Coal. for Better Gov't.*, 901 F.3d 498, 512 (5th Cir. 2018); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 332 (5th Cir. 2008); *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020); *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985).

[48] *Amstar*, 615 F. 2d at 263 & n.9 ("Although Monaghan was aware of 'Domino' sugar at the time, he was unaware of any other pizzerias by that name. There is no evidence the name was adopted with any intent to confuse . . . .").

[49] *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 456 (5th Cir. 2017) (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 23:120 (4th Ed. 2009)); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004) ("Intent to compete, however, is not tantamount to intent to confuse.").

[50] *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 623 (5th Cir. 2023).

**4.12    Trademark Infringement – Evidence of Actual Confusion[51]**

The seventh digit to consider in analyzing likelihood of confusion is evidence of actual confusion or mistake as to the source, affiliation, or sponsorship of Defendants' products.  Actual confusion need not be proven but may be the best evidence of likelihood of confusion.[52]  There may be actual confusion if people inadvertently contact Defendant while looking to do business or contact Plaintiff, or if people are confused about whether Plaintiff is affiliated with Defendant.

In determining the weight to be given to this factor, you should consider the extent to which the type of confusion shown has been or would be likely to sway consumer purchases.  Evidence that confusion in fact swayed consumer purchases is strong evidence of a likelihood of confusion.[53]  However, more evidence is required to show a likelihood of confusion when the type of confusion shown did not or cannot sway purchases.[54]

Actual confusion has more weight if it affects a potential consumer considering whether to transact business with Plaintiff or Defendants. To show actual confusion, Plaintiff may rely on reported instances of consumer confusion.  However, isolated instances of confusion about the affiliation of two companies that do not result in redirected business are not enough to find actual confusion.  Instances of uncertainty about affiliation or connection should be weighed against each party's volume of business as a whole.[55]  The confusion of both retailers and consumers is relevant evidence of actual confusion.

Actual confusion evidence can demonstrate a likelihood of confusion even if confused

---

[51] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017); *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 483 (5th Cir. 2008); *Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 595 (5th Cir. 1985).
[52] *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 623 (5th Cir. 2023).
[53] *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 623 (5th Cir. 2023).
[54] *Id.*
[55] *Id.*

persons realize their mistake after further investigation.  This is called "initial interest" confusion.  A potential consumer may not consider Plaintiff's trademarked goods or services even if the confusion with Defendants' goods or services is cleared up. Defendants may have gained the consumer's credibility and obtained the business before or after the confusion is cleared.[56]  However, short-lived impressions or a fleeting and quickly corrected mix-up of names is not evidence of actual confusion.[57]

---

[56] *Id.* at 626-27 (5th Cir. 2023); *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998).

[57] *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 626-27 (5th Cir. 2023); *Casa Tradición S.A. de C.V. v. Casa Azul Spirits, LLC*, No. H-22-2972, 2022 U.S. Dist. LEXIS 227492, at *25 (S.D. Tex. Dec. 19, 2022) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017)); *True Believers Ink 2, Corp. v. Russell Brands, LLC*, No. 18-CV-00432, 2020 U.S. Dist. LEXIS 77689, at *19-20 (E.D. Tex. May 4, 2020); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 506 (5th Cir. 1979) (stating that "short-lived impressions," if "confusion at all," did not tip scales).

### 4.13    Trademark Infringement – Degree of Care[58]

The eighth digit to consider in analyzing likelihood of confusion is the degree of care exercised by purchasers.  Confusion is generally more likely if the products in question are impulse items or are inexpensive.  Conversely, a person buying a big-ticket or expensive item is ordinarily expected to be a more careful buyer than the impulse purchaser or the purchaser of a relatively inexpensive item.[59]   If there is evidence that consumers use a great deal of care when making purchasing decisions, then they may be less likely to be confused.  If the items are expensive and the buyers are sophisticated, then confusion is less likely to occur.[60]

However, even sophisticated purchasers can be confused by similar marks used in the same general field.   Additionally, even sophisticated purchasers can be subject to initial-interest confusion.  Initial-interest confusion is especially relevant if the parties are direct competitors in the same market.[61]

---

[58] *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 595 (5th Cir. 1985).

[59] *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009) (citing *Falcon Rice Mill, Inc. v. Comty. Rice Mill, Inc.*, 725 F.2d 336, 345 n.9 (5th Cir.1984)); *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 483 (5th Cir. 2008); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 504 n.10 (5th Cir. 1979).

[60] *Bd. of Regents of the Univ. of Hous. Sys. v. Hous. Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 597 (S.D. Tex. 2016).

[61] *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 707, 711 (S.D. Tex. 2009).

*4.14    Weighing the Digits of Confusion*

As I told you earlier, it is up to you to determine how to weigh each digit in determining if Plaintiff has proved by a preponderance of evidence there is a likelihood of confusion.  You do not need to give equal weight to each factor.  You must weigh the digits separately for each of the three trademarks asserted by Plaintiff.  You must also weigh the factors for each mark against each Defendant separately.

### 4.15   Expressive Words

*Plaintiff proposes the following changes:*

Defendant's ~~work [describe allegedly infringing work],~~ use of "Shield Liners" word mark and logo may be ~~is~~ an expressive work that is not using Plaintiff's mark as its own mark,[62] but rather is using Plaintiff's mark in a way that is artistically relevant to the expressive aspects of Defendant's work,[63]  and is accordingly protected by the First Amendment.[64]   Therefore, if you find Defendants' use of the "Shield Liners" word mark and logos to be expressive, you may find for Plaintiff on its trademark-infringement claim against this ~~work~~ use only if you find that the case for likelihood of consumer confusion is particularly strong.[65]

One way, though not the only way, to find a particularly strong case for likelihood of

---

[62] *See Jack Daniel's Props., Inc., v. VIP Prods. LLC*, 599 U.S. 140, 155-63 (2023) (explaining that First Amendment protection does not apply when the defendant uses the plaintiff's mark "as a mark," that is, as a source identifier for the defendant's own products).  If the defendant is using the plaintiff's mark as a source identifier, although First Amendment protection does not apply, the final paragraph of this section on the relationship between parody and likelihood of confusion could still apply, as in *Jack Daniel's*.  *See id.* at 161.

[63] The artistic relevance prong of the First Amendment analysis is generally considered a low threshold in circuits that have adopted this doctrine.  *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 665 n.3 (5th Cir. 2000) ("The magistrate judge did not decide the threshold matter whether Westchester's title bears some artistic relevance to the underlying magazine.  There can be no question on this point, however."); *see also Rogers v. Grimaldi*, 875 F.2d 994, 999 (2nd Cir. 1988) (discussing the "low threshold of minimal artistic relevance"); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) (explaining that "any artistic relevance above zero" satisfies the required).

[64] *See Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 665 (5th Cir. 2000) (citing *Sugar Busters LLC v. Brennan*, 117 F.3d 258, 269 n.7 (5th Cir. 1999)).  *Cf. Estate of Barre v. Carter*, 272 F. Supp. 3d 906, 945 (E.D. La. 2017) ("The Fifth Circuit has applied the *Rogers* test with respect to trademark infringement claims involving titles of works.  However, it does not appear that the Fifth Circuit has considered whether the *Rogers* test should be applied in trademark cases involving artistic works generally."); *Rin Tin Tin, Inc. v. First Look Studios, Inc.*, 671 F. Supp. 2d 893, 902 (S.D. Tex. 2009) (stating "the First Amendment applies to protect titles and works from federal claims of confusion.").

[65] *See Westchester*, 214 F.3d at 667-68 ("As has been discussed, Westchester's First Amendment interest in choosing a title for its magazine requires a particularly compelling likelihood of confusion.").  The court should carefully consider whether and how to frame this issue for the jury versus treating it as a matter of law.

confusion is to find that Defendant intended to trade on Plaintiff's goodwill and reputation.[66] Another way might be if the case for likelihood of confusion is clear and unambiguous, or if Defendant's use of Plaintiff's trademark explicitly misleads consumers as to the source or content of the work.[67]

On the other hand, if Defendant's work is a successful parody of Plaintiff's work, such that consumers would be likely to understand that Defendant's work is poking fun at or criticizing Plaintiff's work rather than identifying with it, this would generally tend to lessen the likelihood of confusion.[68]

---

[66] *See id.* at 668.

[67] *See Estate of Barre*, 272 F.3d at 945-946.

[68] *See Jack Daniel's Props., Inc., v. VIP Prods. LLC*, 599 U.S. 140, 161 (2023) (explaining that an allegedly infringing work's expressive message, particularly a parodic one, "may properly figure in assessing the likelihood of confusion," and that to succeed, a parody must create contrasts with the original "so that its message of ridicule or pointed humor comes clear," and that *if* that is done, "a parody is not often likely to create confusion").

### *4.16 "Unclean Hands" Affirmative Defense*

Defendants contend that, even if Plaintiff could prevail on one or more of its trademark or trade dress claims against Defendants, Plaintiff is not entitled to any recovery or relief on any of those claims under the doctrine of unclean hands.  This bars a plaintiff from benefiting when its own conduct in connection with the same matter has been unjust, marked by a lack of good faith, or violates the principles of equity and fair dealing.[69]

Defendant bears the burden of proving by a preponderance of the evidence that Plaintiff has unclean hands.  Defendant must show that Plaintiff's conduct has been inequitable and that Plaintiff's conduct relates to the subject matter of its trademark-related claims it asserted against Defendant.  Defendant also must show that it has been seriously harmed by Plaintiff's conduct and that these wrongs cannot be corrected without applying the doctrine of unclean hands.[70]

---

[69] *Janes v. Watson*, No. SA-05-CA-0473, 2006 U.S. Dist. LEXIS 59004, at *50-51 (W.D. Tex. Aug. 2, 2006) (citations omitted); *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987). The Fifth Circuit has cited with approval *Fuddruckers* and other authorities recognizing the applicability of the unclean hands defense in trademark and unfair competition cases.  *See Sugar Busters LLC v. Brennan*, 177 F.3d 258, 271-72 (5th Cir. 1999) (citing *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997)); Restatement (Third) of Unfair Competition, § 32 & cmt. a (Am. L. Inst. 1995) ("The doctrine of unclean hands is applicable in actions for the infringement of registered trademarks ... and in actions involving unregistered marks under § 43(a) of the [Lanham Act] and at common law."); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 31:44-58 (4th ed. 2009).

[70] *Janes v. Watson*, No. SA-05-CA-0473, 2006 U.S. Dist. LEXIS 59004, at *50-51 (W.D. Tex. Aug. 2, 2006) (citations omitted).

**4.17    Trademark Infringement – Award of Defendants' Profits[71]**

If you find that Defendant infringed Plaintiff's trademark rights, you must then determine what damages, if any, Plaintiff is entitled to recover from Defendant. In this case, Plaintiff does not seek any actual damages, but instead seeks damages from Defendant in the form of the profits attributable to Defendant's alleged infringement.

You should not conclude from the fact that I am instructing you about damages that I have any opinion as to whether Plaintiff has proved liability against Defendant. It is your task first to decide whether Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that any Defendant is liable and that Plaintiff is entitled to recover money from that Defendant for infringement.[72]

Plaintiff must prove by a preponderance of evidence its entitlement to, and, if so, the amount of profits resulting from the infringement of Defendants. In determining whether to award profits in this case, the factors to be considered include, but are not limited to:

1) whether any Defendant had the intent to confuse or deceive,

2) whether sales have been diverted from Plaintiff to any Defendant,

3) the adequacy of other remedies,

4) any unreasonable delay by Plaintiff in asserting its rights,

5) the public interest in making the misconduct unprofitable, and

6) whether it is a case of palming off, which occurs when a seller misrepresents his own product as someone else's product.[73]

---

[71] 15 U.S.C. § 1117(a); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 337 (5th Cir. 2008).

[72] Fifth Circuit Pattern Jury Instructions (Civil Cases) § 15.1 (2020).

[73] *Pebble Beach Co. v. Tour 18 I Ltd*., 155 F.3d 526, 554 (5th Cir. 1998) (collecting cases); *see also Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 28 n.1 (2003) (stating that palming off occurs when a seller misrepresents his own product as someone else's product.).

It is up to you to determine how to weigh each factor, and you do not need to give each factor equal weight.

If you find, subject to these principles of equity, that Plaintiff is entitled to recover Defendants' profits, you must then determine the amount of Defendant's profits that are attributable to the infringement.

Plaintiff's burden is to prove, by a preponderance of the evidence, Defendant's individual sales of the product bearing the infringing trademark.  It also is Plaintiff's burden to prove, by a preponderance of the evidence, the amount of profits attributable to Defendant's unlawful use of its mark.[74]  Defendant then has the burden to prove by a preponderance of the evidence any costs or deductions that it believes must be deducted to calculate its net profits.

---

[74] *Pebble Beach*, 155 F.3d at 554-55.

*Plaintiff proposes moving these definitions from section 4.3 to immediately before the questions.*

For purposes of Plaintiff's claims of trademark infringement, the following definitions apply:

"Word Mark" means Shield Industrial Coatings, LLC's use of the words "Shield Liners" to describe a polyurea chemical solution primarily used in the oil and gas, automotive, and construction industries, often used as a spray on bedliner for pickup trucks.

"Company Logo" means Shield Industrial Coatings, LLC's combined word and design company mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Industrial Coatings" in all caps but smaller font over a black and white shield with a blue outline, as depicted below:



"Product Logo" means Shield Industrial Coatings, LLC's combined word and design product mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Liners" in all caps but smaller font printed over a black and white shield with a blue outline, as depicted below:



"Premises" means the office and warehouse space leased by Shield Industrial Coatings, LLC in 2023.

*xx*

For purposes of Plaintiff's claims of trademark infringement, the following definitions apply:

"Word Mark" means Shield Industrial Coatings, LLC's use of the words "Shield Liners" to describe a polyurea chemical solution primarily used in the oil and gas, automotive, and construction industries, often used as a spray on bedliner for pickup trucks.

"Company Logo" means Shield Industrial Coatings, LLC's combined word and design company mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Industrial Coatings" in all caps but smaller font over a black and white shield with a blue outline, as depicted below:



"Product Logo" means Shield Industrial Coatings, LLC's combined word and design product mark for Shield Industrial Coatings, LLC stating "Shield" in all caps over "Liners" in all caps but smaller font printed over a black and white shield with a blue outline, as depicted below:



"Premises" means the office and warehouse space leased by Shield Industrial Coatings, LLC in 2023.

### 4.18   Trademark Eligibility

QUESTION _____

Are any of the following eligible for protection as a trademark?

Answer "Yes" or "No" as to each.

Word Mark: _____

Company Logo: _____

Product Logo: _____

### 4.19    *Trademark Infringement*

If you answered "Yes" to Question _____ [eligible for protection as a trademark] as to the Word Mark, the Product Logo, or the Company Logo, then answer the following question. Otherwise, do not answer the following question.

QUESTION _____

Have any of the following defendants engaged in conduct that is likely to cause confusion, or to cause mistake, or to deceive as to (i) the affiliation, connection, or association of such person with Shield Industrial Coatings, LLC, or (ii) the origin, sponsorship, or approval of defendants' goods, services, or commercial activities?

Answer "Yes" or "No" as to each Defendant.

Shield Liners LLC: _____

Colton Fultz: _____

Jessica Fultz: _____

***4.20    Trademark Damages***

If you answered "Yes" to Question _____ (TM Infringement) as to any of the Defendants,

then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate

Shield Industrial for its damages, if any, that resulted from such trademark infringement?

Answer in dollars and cents.

Answer: _____

### 4.21    *Unfair Competition*

If you answered "Yes" to Question _____ [eligible for protection as a trademark] as to the Word Mark, the Product Logo, or the Company Logo, then answer the following question. Otherwise, do not answer the following question.

QUESTION _____

Have any of the defendants misrepresented the nature, characteristics, qualities, or geographic origin of their goods, services, or commercial activities in commercial advertising or promotion?

Answer "Yes" or "No" as to each Defendant.

Shield Liners LLC: _____

Colton Fultz: _____

Jessica Fultz: _____

*4.22    Unfair Competition Damages*

If you answered "Yes" to Question _____ (Unfair Competition) as to any of the Defendants,

then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate

Shield Industrial for its damages, if any, that resulted from such unfair competition?

Answer in dollars and cents.

Answer: _____

**4.23    *Cyberpiracy***

If you answered "Yes" to Question _____ [eligible for trademark protection] then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

Did any of the Defendants (i) have a bad faith intent to profit websites, and (ii) register, traffic in, or use a domain name that is identical to or confusingly similar to the shieldliners.com and shield-liners.com websites?

Answer "Yes" or "No" as to each Defendant.

Shield Liners LLC: _____

Colton Fultz: _____

Jessica Fultz: _____

15 USC §1125(d)(1)(B)

***4.24    Cyberpiracy Damages***

If you answered "Yes" to Question _____ (Cyberpiracy) as to any of the Defendants, then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Shield Industrial for its damages, if any, that resulted from such cyberpiracy?

Answer in dollars and cents.

Answer: _____

**4.25**    ***Irreparable Injury***

If you answered "Yes" to Question _____ [trademark infringement], Question ____ [unfair competition], or Question _____ [cyberpiracy], then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

Does Defendants' use of the trademarks that you found eligible for protection in Question __ [eligible for trademark protection] cause irreparable injury to Shield Industrial Coatings, LLC?

Answer "Yes" or "No."

Answer: _____

<u>**CONTRACT**</u>

***5.1 Defenses – Basic Question***

If you answered "Yes" to Question _____, then answer the following question. Otherwise, do not answer the following question.

QUESTION _____

*Plaintiff proposes changing "alleged failure to act" to "conduct" in the questions.*

Was Defendants' ~~alleged failure to act~~ conduct excused?

*Plaintiff proposes moving the ratification instruction here instead of the following page along with adding the first sentence.*

Defendants' conduct is excused if Plaintiff ratified it.

A party's conduct includes conduct of others that the party has ratified. Ratification may be express of implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.

Answer "Yes" or "No."

Answer: _____

---

Formatted: Font: Italic

Formatted: Indent: First line:  0"

*5.2 Instruction on Ratification*

~~A party's conduct includes conduct of others that the party has ratified. Ratification may be express of implied. Implied ratification occurs if a party, though he may have been unaware of unauthorized conduct taken on his behalf at the time it occurred, retains the benefits of the transaction involving the unauthorized conduct after he acquired full knowledge of the unauthorized conduct. Implied ratification results in the ratification of the entire transaction.~~

*See* Texas Pattern Jury Charge (2024).

***5.3 Question and Instruction on Quantum Meruit***

*Plaintiff proposes moving the Texas Theft Liability Act, breach of fiduciary liability, conspiracy, and damages questions here so that all of plaintiff's claim questions are together and all of counterplaintiff and third-party plaintiffs' claims are grouped together.*

QUESTION _____

        Did Defendant Colton Fultz perform compensable work for Plaintiff for which ~~Defendants were~~ he was not compensated.

        Defendant Colton Fultz performed compensable work if he rendered valuable services or furnished valuable materials to Plaintiff; Plaintiff accepted, used, and benefited from the services or materials; and, under the circumstances, Plaintiff was reasonably notified that Defendant Colton Fultz expected to be compensated for the services or materials.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

QUESTION _____

Did Defendant Jessica Fultz perform compensable work for Plaintiff for which ~~Defendants were~~ she was not compensated.

Defendant Jessica Fultz performed compensable work if she rendered valuable services or furnished valuable materials to Plaintiff; Plaintiff accepted, used, and benefited from the services or materials; and, under the circumstances, Plaintiff was reasonably notified that Defendant Jessica Fultz expected to be compensated for the services or materials.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

<u>**FRAUD**</u>

***6.1 Question on Common-Law Fraud – Intentional Misrepresentation***

QUESTION _____

Did Third-Party Defendant Michael Witt commit fraud against Defendant Colton Fultz?

Fraud occurs when–

1.  a party makes a material misrepresentation, and

2.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3.  the misrepresentation is made with the intention that it should be acted on by the other party, and

4.  the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means–

1.  A false statement of fact or

2.  A promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

QUESTION _____

Did Third-Party Defendant Kraig Killough commit fraud against Defendant Colton Fultz?

Fraud occurs when–

1.  a party makes a material misrepresentation, and

2.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3.  the misrepresentation is made with the intention that it should be acted on by the other party, and

4.  the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means–

1.  A false statement of fact or

2.  A promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

QUESTION _____

Did Third-Party Defendant Michael Witt commit fraud against Defendant Jessica Fultz?

Fraud occurs when–

1. a party makes a material misrepresentation, and

2. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3. the misrepresentation is made with the intention that it should be acted on by the other party, and

4. the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means–

1. A false statement of fact or

2. A promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

QUESTION _____

Did Third-Party Defendant Kraig Killough commit fraud against Defendant Jessica Fultz?

Fraud occurs when–

1. a party makes a material misrepresentation, and

2. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3. the misrepresentation is made with the intention that it should be acted on by the other party, and

4. the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means–

1. A false statement of fact or

2. A promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

### 6.2 Question on Common-Law Fraud – Failure to Disclose

*Plaintiff proposes adding "by nondisclosure" to "fraud" in these sets of questions as it could be confusing to ask two separate questions on fraud with differing instructions.*

> **Formatted:** Font: Italic

QUESTION _____

    Did Third-Party Defendant Michael Witt commit fraud by nondisclosure against Defendant Colton Fultz?

    Fraud occurs when–

1. a party fails to disclose a material fact within the knowledge of that party, and

2. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3. the party intends to induce the other party to take some action by failing to disclose the fact, and

4. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

QUESTION _____

Did Third-Party Defendant Kraig Killough commit fraud by nondisclosure against Defendant Colton Fultz?

Fraud occurs when–

1. a party fails to disclose a material fact within the knowledge of that party, and

2. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3. the party intends to induce the other party to take some action by failing to disclose the fact, and

4. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

QUESTION _____

Did Third-Party Defendant Michael Witt commit fraud by nondisclosure against Defendant Jessica Fultz?

Fraud occurs when–

1. a party fails to disclose a material fact within the knowledge of that party, and

2. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, and

3. the party intends to induce the other party to take some action by failing to disclose the fact, and

4. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

QUESTION _____

Did Third-Party Defendant Kraig Killough commit fraud by nondisclosure against

Defendant Jessica Fultz?

Fraud occurs when–

1. a party fails to disclose a material fact within the knowledge of that party, and

2. the party knows that the other party is ignorant of the fact and does not have an equal

   opportunity to discover the truth, and

3. the party intends to induce the other party to take some action by failing to disclose the

   fact, and

4. the other party suffers injury as a result of acting without knowledge of the undisclosed

   fact.

Answer "Yes" or "No."

Answer: _____

*See* Texas Pattern Jury Charge (2024).

<u>**THEFT**</u>

**7.1 Texas Theft Liability Act – Ownership**

*Plaintiff proposes moving these questions [TTLA, fiduciary duty, conspiracy] after the trademark infringement questions so that all plaintiff's liability and damages questions are together and all counterplaintiff and third-party plaintiffs liability and damages questions are together.*

| Formatted: Font: Italic |

QUESTION _____

    Did Shield Industrial Coatings, LLC own personal property in the Premises?

    Shield Industrial Coatings, LLC owned the property at issue if it had—

    1.  title to the property; or

    2.  possession of the property, whether lawful or not; or

    3.  a greater right to possession of the property than Defendants.

    "Possession" means actual care, custody, control, or management?

Answer "Yes" or "No."

Answer: _____

TPJC 7.1

*Plaintiff proposes inserting this question between TTLA ownership and damages:*

If you answered "Yes" to Question _____ [TTLA – ownership] then answer the following question. Otherwise, do not answer the following question.

QUESTION ____ (TTLA – liability)

Did Defendants commit theft of Shield Industrial's property?

Defendants committed theft if *they* —

      1.     appropriated property; and

      2.     the appropriation was without the consent of the owner; and

      *3.*     Defendants intended to appropriate the property.

Answer "Yes" or "No" for each Defendant.

Shield Liners LLC: _____

Colton Fultz: _____

Jessica Fultz: _____

TPJC 7.2

### 7.2 Texas Theft Liability Damages

If you answered "Yes" to Question _____ (TTLA – Liability) as to any of the Defendants, then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Shield Industrial for its damages, if any, that resulted from such theft?

Answer in dollars and cents.

Answer: _____

### 7.3 Texas Theft Liability

If you answered "Yes" to Question _____ [TTLA - Liability] as to any of the Defendants, then answer the following question. Otherwise, do not answer the following question.

*Plaintiff proposes deleting this language.  In fairness to Defendant, plaintiff originally proposed this language, but it would not apply in federal court where the verdict should be unanimous.*

~~To answer "Yes" to the following question, your answer must be unanimous.  You may answer "No" to the following question only upon a vote of ten or more jurors.  Otherwise, you must not answer the following question.~~

QUESTION _____

Do you find by clear and convincing evidence that the harm to Shield Industrial resulted from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Colton Fultz to cause substantial injury or harm to Shield Industrial.

Answer "Yes" or "No."

Answer: _____

**Formatted:** Indent: First line:  0"

**Formatted:** Font: Italic

<u>**FIDUCIARY DUTY**</u>

***8.1 Breach of Fiduciary Duty***

QUESTION _____

Did Colton Fultz comply with his fiduciary duty to Shield Industrial?

Because a relationship of trust and confidence existed between them, Colton Fultz owed Shield Industrial a fiduciary duty.  To prove he complied with his fiduciary duty, Colton Fultz must show—

1.    the transaction in question was fair and equitable to Shield Industrial; and

2.    Colton Fultz made reasonable use of the confidence that Shield Industrial placed in him; and

3.    Colton Fultz acted in the utmost good faith and exercised the most scrupulous honesty toward Shield Industrial; and

4.    Colton Fultz placed the Shield Industrial before his own and did not use the advantage of his position to gain any benefit for himself at the expense of Shield Industrial; and

5.    Colton Fultz fully and fairly disclosed all important information to Shield Industrial concerning the transaction.

Answer "Yes" or "No."

Answer: _____

TPJC 104.2

***8.2 Breach of Fiduciary Duty – Disgorgement of Profits***

If you answered "No" to Question _____ (Fid. Duty), then answer the following question.

Otherwise, do not answer the following question.

QUESTION _____

What was the amount of Colton Fultz's profit from the breach of fiduciary duty you found

in Question ___ [Fid. Duty]?

Answer in dollars and cents.

Answer: _____

PJC 115.16

### 8.3 Breach of Fiduciary Duty – Damages

If you answered "No" to Question _____ (Fid. Duty), then answer the following question. Otherwise, do not answer the following question.

QUESTION _____

What amount of money, if any, if paid now in cash, would fairly and reasonably compensate Shield Industrial Coatings, LLC for its damages, if any, that resulted from such breach of fiduciary duty?

Answer in dollars and cents.

Answer: _____

PJC 115.18

***8.4 Breach of Fiduciary Duty – Malice***

If you answered "No" to Question _____ [Fid. Duty] then answer the following question.

Otherwise, do not answer the following question.

*Plaintiff proposes deleting this language.  In fairness to Defendant, plaintiff originally proposed*
*this language, but it would not apply in federal court where the verdict should be unanimous.*

~~To answer "Yes" to the following question, your answer must be unanimous.  You may~~
~~answer "No" to the following question only upon a vote of ten or more jurors.  Otherwise, you~~
~~must not answer the following question.~~

QUESTION _____

Do you find by clear and convincing evidence that the harm to Shield Industrial resulted
from malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a
firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means a specific intent by Colton Fultz to cause substantial injury or harm to
Shield Industrial.

Answer "Yes" or "No."

Answer: _____

<u>**CONSPIRACY**</u>

***9.1 Breach of Fiduciary Duty***

If you answered "Yes" to Questions _____ [Trademark Infringement], ___ [Unfair Competition], ___ [Theft Liability Act], or "No" to Question ____ [Fiduciary Duty], then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

Were Defendants part of a conspiracy that damaged Shield Industrial?

To be part of a conspiracy, Shield Liners, Colton Fultz, or Jessica Fultz and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to Shield Industrial.  One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy

Answer "Yes" or "No."

Answer: _____

<u>**DAMAGES**</u>

***7.1 Consider Damages Only If Necessary***

If Defendants have proved any of their claims against Plaintiff or Third-Party Defendants by a preponderance of the evidence, you must determine the damages to which each of Defendants is entitled. You should not interpret the fact that I am giving instructions about Defendants' damages as an indication in any way that I believe that any of Defendants should, or should not, win this case. It is your task first to decide whether Plaintiff or Third-Party Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that Plaintiff or Third-Party Defendants are liable and that any of Defendants is entitled to recover money from Plaintiff or Third-Party Defendants.

*See* Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

**7.2 Defensive Instruction on Mitigation – Contract Damages**

*Plaintiff does not oppose this instruction but suggests moving it to the damages questions rather than as a standalone instruction.*

| | |
|---|---|
| | **Formatted:** Indent: First line: 0" |
| | **Formatted:** Font: Italic |

Do not include in your answer any amount that you find Plaintiff could have avoided by the exercise of reasonable care.

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate his/her damages, that is, to avoid or to minimize those damages.

If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find that the defendant proved by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages that he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages that the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

*See* Texas Pattern Jury Charge (2024); Fifth Circuit Court of Appeals Pattern Jury Instructions (Civil Cases).

### 7.3 Question on Promissory Estoppel – Reliance Damages

*Plaintiff objects to this question as it is for promissory estoppel reliance damages but promissory estoppel was not pled. Also, there is a blank under "following elements of damages" and nos. 1 and 2 are not tailored to this case.  Also, this question should be predicated on a "Yes" answer to the promissory estoppel liability question if there were one.  Also, future damages have not been pled.*

> **Formatted:** Font: Italic

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Colton Fultz for his damages, if any, that resulted from his reliance on Third-Party Defendant Michael Witt's promise?

Consider the following elements of damages, if any, and none other.


Do not add any amount for interest on damages, if any.

1. [Element A] sustained in the past.

    Answer: _____

2. [Element A] that, in reasonable probability, will be sustained in the future.

    Answer: _____

*See* Texas Pattern Jury Charge (2024).

*Plaintiff objects to this question as it is for promissory estoppel reliance damages but promissory estoppel was not pled. Also, there is a blank under "following elements of damages" and nos. 1 and 2 are not tailored to this case.  Also, this question should be predicated on a "Yes" answer to the promissory estoppel liability question if there were one.  Also, future damages have not been pled.*

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Colton Fultz for his damages, if any, that resulted from his reliance on Third-Party Defendant Kraig Killough's promise?

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

1. [Element A] sustained in the past.

    Answer: _____

2. [Element A] that, in reasonable probability, will be sustained in the future.

    Answer: _____

*See* Texas Pattern Jury Charge (2024).

*Plaintiff objects to this question as it is for promissory estoppel reliance damages but promissory estoppel was not pled. Also, there is a blank under "following elements of damages" and nos. 1 and 2 are not tailored to this case.  Also, this question should be predicated on a "Yes" answer to the promissory estoppel liability question if there were one.  Also, future damages have not been pled.*

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Jessica Fultz for his damages, if any, that resulted from his reliance on Third-Party Defendant Michael Witt's promise?

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

1. [Element A] sustained in the past.

   Answer: _____

2. [Element A] that, in reasonable probability, will be sustained in the future.

   Answer: _____

*See* Texas Pattern Jury Charge (2024).

*Plaintiff objects to this question as it is for promissory estoppel reliance damages but promissory estoppel was not pled. Also, there is a blank under "following elements of damages" and nos. 1 and 2 are not tailored to this case. Also, this question should be predicated on a "Yes" answer to the promissory estoppel liability question if there were one. Also, future damages have not been pled.*

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Jessica Fultz for his damages, if any, that resulted from his reliance on Third-Party Defendant Kraig Killough's promise?

Consider the following elements of damages, if any, and none other.

Do not add any amount for interest on damages, if any.

1. [Element A] sustained in the past.

   Answer: _____

2. [Element A] that, in reasonable probability, will be sustained in the future.

   Answer: _____

*See* Texas Pattern Jury Charge (2024).

### 7.4 Question on Quantum Meruit Recovery

*Plaintiff objects to the lack of a predicating instruction, as this question should be predicated on a "yes" answer to the quantum meruit liability questions.  Also, there should be separate questions for Colton and Jessica as both have liability questions.  Also, future damages have not been pled.*

QUESTION _____

What is the reasonable value of such compensable work at the time and place it was performed?

Answer in dollars and cents, if any.

Answer: _____

*See* Texas Pattern Jury Charge (2024).

***7.5 Question and Instruction on Direct Damages Resulting from Fraud***

*Plaintiff objects to the lack of a predicating instruction for this question, as it should be predicated on a "Yes" answer to the Colton – Witt fraud liability question.  Also, elements of damages are not filled in and nos. 1 and 2 are not tailored to this case.  Also, future damages have not been pled.*

> **Formatted:** Font: Italic

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Colton Fultz for his damages, if any, that resulted from the fraudulent acts of Third-Party Defendant Michael Witt?

Consider the following elements of damages, if any, and none other.


In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1.  [Element A] sustained in the past.

    Answer: _____

2.  [Element A] that, in reasonable probability, will be sustained in the future.

    Answer: _____

*See* Texas Pattern Jury Charge (2024).

*Plaintiff objects to the lack of a predicating instruction for this question, as it should be predicated on a "Yes" answer to the Colton – Killough fraud liability question.  Also, elements of damages are not filled in and nos. 1 and 2 are not tailored to this case.  Also, future damages have not been pled.*

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Colton Fultz for his damages, if any, that resulted from the fraudulent acts of Third-Party Defendant Kraig Killough?

Consider the following elements of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1.  [Element A] sustained in the past.

    Answer: _____

2.  [Element A] that, in reasonable probability, will be sustained in the future.

    Answer: _____

*See* Texas Pattern Jury Charge (2024).

*Plaintiff objects to the lack of a predicating instruction for this question, as it should be predicated on a "Yes" answer to the Jessica – Witt fraud liability question.  Also, elements of damages are not filled in and nos. 1 and 2 are not tailored to this case.  Also, future damages have not been pled.*

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Jessica Fultz for her damages, if any, that resulted from the fraudulent acts of Third-Party Defendant Michael Witt?

Consider the following elements of damages, if any, and none other.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1. [Element A] sustained in the past.

   Answer: _____

2. [Element A] that, in reasonable probability, will be sustained in the future.

   Answer: _____

*See* Texas Pattern Jury Charge (2024).

*Plaintiff objects to the lack of a predicating instruction for this question, as it should be predicated on a "Yes" answer to the Jessica – Killough fraud liability question.  Also, elements of damages are not filled in and nos. 1 and 2 are not tailored to this case.  Also, future damages have not been pled.*

QUESTION _____

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Defendant Jessica Fultz for her damages, if any, that resulted from the fraudulent acts of Third-Party Defendant Kraig Killough?

Consider the following elements of damages, if any, and none other.


In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Answer separately in dollars and cents for damages, if any.

1.  [Element A] sustained in the past.

    Answer: _____

2.  [Element A] that, in reasonable probability, will be sustained in the future.

    Answer: _____

*See* Texas Pattern Jury Charge (2024).

***7.6 Damages – Punitive***

If you answered "Yes" to Question _____ (Fid. Duty – Predicate) or Question _____ (TTLA – Predicate), then answer the following question.  Otherwise, do not answer the following question.

QUESTION _____

What sum of money, if any, if paid now in cash, should be assessed against Colton Fultz, Jessica Fultz, or Shield Liners, LLC and awarded to Shield Industrial Coatings, LLC, for the conduct found in response to Question _____ (Fid. Duty) or Question _____ (TTLA)?

"Punitive damages" means any amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are –

1.  The nature of the wrong.

2.  The character of the conduct involved.

3.  The degree of culpability of the wrongdoer.

4.  The situation and sensibilities of the parties concerned.

5.  The extent to which such conduct offends a public sense of justice and propriety.

6.  The net worth of Defendants.

Answer separately in dollars and cents for damages, if any.

Answer: _____

*See* PJC 7.12; Tex. Civ. Prac. & Rem. Code § 41.011(a).

***7.7 Question on Attorney's Fees***

QUESTION _____

What is a reasonable fee for the necessary legal services of Defendants' attorney for the fraud claims?

A reasonable fee is the reasonable hours worked, and to be worked, multiplied by a reasonable hourly rate for that work.

Do not include fees that relate solely to any other claim.

Answer with an amount in dollars and cents for each of the following:

7.  For representation in the trial court.

Answer: _____

*See* Texas Pattern Jury Charge (2024).

Further, Defendants reserve the right to supplement and amend these proposed instructions and to submit additional proposed instructions based on this Court's rulings before and/or at trial, or otherwise, as appropriate.

DATED: October 10, 2025                    Respectfully submitted,

                                           Mousilli Law, PLLC

BY:    /s/ Shea N. Palavan
       Shea N. Palavan
          TX Bar No. 24083616
          SDTX Bar No. 1692329
       Lema Mousilli
          TX Bar No. 24056016
          SDTX Bar No. 1358290
       11807 Westheimer Road
       Suite 550, PMB 624
       Houston, Texas 77077
       Tel: (281) 305-9313
       service@mousillilaw.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, and any attachments, will be served to counsel of record, in accordance with the governing rules of procedure regarding service on this October 22, 2025, via electronic filing manager as follows:

Kevin Pennell
**PENNELL LAW FIRM PLLC**
24 Greenway Plaza, Suite 500
Houston, Texas 77046
Tel: (281) 813-8959
service@justwynnelaw.com

*Attorney for Plaintiff, Shield Industrial Coatings, LLC*
*and*
*Third-Party Defendants / Cross-Defendants, Michael Witt and Kraig Killough*